JOHN INGLIS, surviving executor of Henry Day, deceased,

*v.*

JOHN J. McCOOK et al., trustees, and others.

[Argued November 7th, 1904. Decided December 27th, 1904.]

By his will a testator gave one-half of his residuary estate to trustees, for the use of his wife, for life, and upon her death to divide the same among his lawful issue, or to trustees for their use. respectively, as his

wife should direct by any will duly executed. In default of any such will he gave the same to the persons then entitled to the other half of his residuary estate, to be distributed in the same proportions and held upon the same trusts and with like powers as were mentioned in another clause of his will.—*Held*, (1) that the phrase "lawful issue" includes, in its primary meaning, not only children, but descendants; (2) that when used in a will a more restricted meaning may be attributed to it if, from the terms of the testamentary disposition, it clearly appears that testator used the phrase in a particular meaning less general than its ordinary meaning, as, *e. g.*, to children then living, or to children then living and to the representatives of any deceased child. By the other clause referred to testator had provided that the share of his residuary estate thereby disposed of should, under certain circumstances, go to the "lawful issue" of his children, or to his "lawful issue," and had expressly provided that in each case the share should go to lawful issue *per stirpes*, and not *per capita.*—*Held, further*, (3) that the use of the phrase in the clause first referred to, without any restricting words, and the use of the same phrase in the subsequent clause with words restricting its meaning, leads to the conclusion that testator intended a different and unrestricted meaning in the first use, and in the absence of any indication of a contrary intent will require such meaning to be attributed to it; (4) a will duly executed by testator's widow providing for a division of the share she was empowered to appoint, which excluded some of testator's lawful issue then living, was not a valid execution of the power conferred and the disposition over took effect. By the clause secondly referred to, testator gave one-half of his residuary estate in trust for his surviving children, in equal shares, to their use for life. Each of them was empowered, under certain circumstances, to appoint out of his or her share $150,000, by will.—*Held, further*, (5) that a like power was conferred when, by failure of the widow to make a valid appointment of the other share, the same was disposed of to the persons entitled under the other clause, and upon the same trusts and with like powers.

On bill for construction of wills and direction, &c.

*Mr. Elmer King,* for the complainant.

*Mr. Charlton A. Reed* (with whom was *Mr. Thomas Thacher,* of the New York bar), for Malcolm Campbell and Spencer M. Mumby, trustees.

*Mr. George Holmes* (with whom was *Mr. Robert DeForest,* of the New York bar), for Henry W. DeForest and Robert Hall McCormick, trustees.

Mr. *Charles L. Corbin,* for Adele Mittant Mills.

Mr. *William A. Barkalow,* guardian *ad litem* for Mildred Day McCormick.

MAGIE, CHANCELLOR.

The bill in this cause is filed by the surviving executor of the last will and testament and two codicils thereto of Henry Day, late of the county of Morris, in this state. It seeks the direction of the court respecting the distribution of so much of the estate of the said Henry Day as remains in his hands undistributed, and to that end asks the court to determine the true meaning of said will and codicil, and also the true meaning of the will of Phebe Lord Day, and of the will of George Lord Day, all of which, complainant claims, have variant constructions attributed to them by parties interested in the estate, so that he cannot safely distribute the estate in his hands except upon a judicial construction of the several wills and a determination of the meaning thereof.

The bill sets forth in full the will and codicil of Henry Day. It asserts the death of Phebe Lord Day, the widow of Henry Day, in whose behalf a trust fund was created by his will, and sets out in full her will. It also asserts the death of George Lord Day, who was a beneficiary under the will of Henry Day, in whose behalf a trust fund was created by his will, and sets out in full the will of George Lord Day.

The bill makes parties defendant Spencer M. Mumby and Malcolm Campbell, executors of and trustees under the will of George Lord Day, deceased; Adele Mittant Mills, widow of George Lord Day; Susan DeForest Day Parker, a daughter of Henry Day; Sarah Lord McCormick, also a daughter of Henry Day; Henry W. DeForest and R. Hall McCormick, trustees under the will of Henry Day for the benefit of Sarah Lord McCormick; William T. Lawson and John J. McCook, trustees under the will of Henry Day for the benefit of George Lord Day; Henry W. DeForest and Malcolm Campbell, trustees under the will of Henry Day for the benefit of Susan DeForest

Day Parker; John Inglis and Malcolm Campbell, trustees under the will of Henry Day for the benefit of Phebe Lord Day, deceased; Sarah Lord McCormick and Susan DeForest Parker, surviving executrices and trustees under the will of Phebe Lord Day; Robert Hall McCormick, Henrietta Hamilton McCormick, Elizabeth Day McCormick, Phebe Lord McCormick and Mildred Day McCormick, who are the children of Sarah Lord McCormick.

To this bill Malcolm Campbell and Spencer M. Mumby, executors of and trustees under the will of George Lord Day, filed an answer and a cross-bill against the complainant and against the other defendants, thereby setting up claims in respect to the distribution of the estate of Henry Day, deceased, and seeking a decree directing complainant to pay over certain portions or shares of the estate in such manner that they should be eventually received by them as executors and trustees of George Lord Day.

John J. McCook and William T. Lawson, trustees under the will of Henry Day for the benefit of George Lord Day, filed an answer, and thereby substantially admitted the allegations of the bill and submitted to the judgment of the court in respect to their duty as such trustees.

Adele Mittant Mills filed an answer to the bill of complainant and a cross-bill against the complainant and other defendants therein, and thereby seeks relief by an accounting from complainant, as surviving executor of Henry Day, and from him and Malcolm Campbell, as trustees under the will of Henry Day for the benefit of Phebe Lord Day, and direction as to the payment of distributive shares under said will.

To this cross-bill the defendants Susan DeForest Day Parker, as one of the executrices of Phebe Lord Day and individually; Malcolm Campbell, one of the trustees for Susan D. F. D. Parker, under the will of Henry Day, and John Inglis and Malcolm Campbell, trustees under the will of Henry Day for the benefit of Phebe Lord Day, filed an answer.

Sarah Lord McCormick, as one of the executrices of Phebe Lord Day and individually, Robert Hall McCormick, Henrietta Hamilton McCormick, Elizabeth Day McCormick and Phebe

Lord McCormick, filed an answer to the original bill, setting up their claims in respect to the distribution of the estate of Henry Day, and also a separate reply to the various cross-bills of their co-defendants.

William A. Barkalow, appointed guardian *ad litem* for Mildred Day McCormick, an infant defendant, filed an answer in her behalf, setting up her claim in respect to the distribution of the estate of Henry Day, and also a reply to the several cross-bills of her co-defendants.

Susan DeForest Day Parker, as one of the executrices of Phebe Lord Day and individually, Malcolm Campbell, as one of the trustees under the will of Henry Day for the benefit of Susan DeForest Day Parker, and Malcolm Campbell and John Inglis, trustees under the will of Henry Day for the benefit of Phebe Lord Day, filed an answer to the original bill, setting up their claims as to the distribution of the estate of Henry Day.

Robert Hall McCormick and Henry W. DeForest, trustees under the will of Henry Day for the benefit of Sarah Lord McCormick, and Henry W. DeForest, trustee under said will for the benefit of Susan DeForest Day Parker, filed an answer to the original bill and a cross-bill against the complainants and their co-defendants, setting up their claims as to the distribution of the estate of Henry Day, and also a reply to the cross-bills of their co-defendants.

Malcolm Campbell and Spencer M. Mumby, executors of and trustees under the will of George Lord Day, filed an answer to the cross-bill of Adele Mittant Mills.

Malcolm Campbell and Spencer M. Mumby, executors of and trustees under the will of George Lord Day, Susan DeForest Day Parker, one of the executrices of Phebe Lord Day, and individually, Malcolm Campbell, one of the trustees under the will of Henry Day for the benefit of Susan DeForest Day Parker, and Malcolm Campbell and John Inglis, trustees under the will of Henry Day for the benefit of Phebe Lord Day, filed an answer to the cross-bill of the defendants Robert Hall McCormick and Henry W. DeForest, trustees for Sarah Lord McCormick, and Henry W. DeForest, one of the trustees for Susan DeForest Day Parker.

John McCook and William T. Lawson, trustees under the will
of Henry Day for the benefit of George Lord Day, filed an answer
to the various cross-bills of their co-defendants.

Susan DeForest Day Parker, as one of the executrices of
Phebe Lord Day and individually, Malcolm Campbell, one of
the trustees under the will of Henry Day for Susan DeForest
Day Parker, Malcolm Campbell and John Inglis, trustees under
the will of Henry Day for Phebe Lord Day, filed an answer to
the cross-bill of Malcolm Campbell and Spencer M. Mumby,
executors of and trustees under the will of George Lord Day,
deceased.

Adele Mittant Mills filed a reply to the various cross-bills of
her co-defendants.

Replications to the various answers seem to put the whole
matter at issue.

It will be observed that the primary question relates to the
will of Henry Day. By that will various trusts were created in
behalf of different beneficiaries, the trustees of each trust fund
being also different, and a construction of his will is sought to
determine, in the first place, how what remains of his estate is
to be distributed. But, by the terms of his will, his widow was
empowered to appoint out of the trust fund created thereby for
her benefit, and as by her will such an appointment was at-
tempted to be made, the question how that fund is to be dis-
tributed involves the construction of the will of Phebe Lord Day.
In like manner, and because a power of appointment out of the
trust fund created for his benefit was conferred upon George
Lord Day by Henry Day's will, which power he attempted to
exercise by his last will, the question how the share which was
set apart by the will of Henry Day for the benefit of George
Lord Day should be distributed involves the construction of the
will of George Lord Day.

We have therefore in this involved matter the necessity of
dealing with three separate testamentary dispositions, viz., that
of Henry Day primarily, and those of Phebe Lord Day and
George Lord Day secondarily and incidentally, and the ques-
tions thus arising seem to be represented upon the pleadings, no
testimony having been taken, except that presented orally on

final hearing and hereafter dealt with. The pertinent facts involved are substantially admitted by all the parties.

Another question is presented, which may be briefly stated thus: Upon certain constructions of the various wills in question it would seem that the surviving executor of Henry Day might be directed to pay one or more of the shares of Henry Day's estate to trustees appointed by his will and codicils, and that the last-named trustees might be directed to pay the same to the persons to whom the same is eventually to go; and in one instance that the last-named trustees might be directed to pay the same, or some part thereof, to the trustees appointed by George Lord Day by his will. It is claimed by persons interested therein that, if the constructions contended for are admitted, the decree should direct the complainant, the surviving executor of Henry Day's will, to pay, in such cases, the share or shares in question, or so much thereof as has not been paid, to the persons or trustees to whom the same is eventually to go. This contention seems to involve only the question of the claims of successive trustees to commissions upon the successive payments.

The matters calling for consideration and judicial construction primarily arise under the fifth and sixth paragraphs of the will of Henry Day, which are expressed in these words:

"*Fifth.* One-half of all the rest and residue of my estate I give to my executors, not including my wife, to have and to hold upon trust, to keep the same invested in securities by them considered safe, to receive the rents, issues and profits of the same, and to pay over the net proceeds of such income half yearly to the use of my said wife during her natural life, and upon her death to divide the same among my lawful issue or to trustees for their use, respectively, as my said wife shall direct by any last will or testament duly executed, and in default of any such will I give the same to the same persons who shall then be entitled to the other undivided half of said residuary mentioned in the next clause of this will, to be distributed in the same proportions and held upon the same trusts and with like powers as are therein mentioned.

"*Sixth.* The remaining half of my residuary estate, real and personal, and in case my said wife should not survive me, the whole thereof, I direct to be disposed of in the following manner: I direct it to be divided into as many shares as I may leave children me surviving and children who may then be deceased leaving issue me surviving; one of these shares I give to be divided equally among the issue of each of my then deceased children *per stirpes* and not *per capita.*

"The other shares I direct my executors to hold each as a separate trust estate, one for the use of each child me surviving, during the life of such child, to keep the same invested in securities by them considered good, to receive the rents, profits and income of the same and to pay over the net proceeds of the same to the use of such child half yearly or oftener during his or her life, and upon his or her death I give the said sum so held for the use of such child to be disposed of as shall be directed by the last will and testament or appointment of any such child, made according to the powers hereinafter named and duly executed, and in default of any such will or appointment I give said sum to the lawful issue of such child, to be divided among them *per stirpes* and not *per capita*, and in default of any such will, appointment or issue, then to my lawful issue then living, such issue taking *per stirpes* and not *per capita*. And I hereby authorize any such child last named to dispose of the share limited to his or her use by will or appointment to or among his or her or my lawful issue, in such shares and upon such legal trusts as each child, respectively, may direct, and in default of any such issue of such child, then I authorize said child to dispose of one hundred and fifty thousand dollars of said fund held in trust for his or her use, to any person or persons or charities he or she may see fit, and the remainder of said fund I give to my lawful issue then living, such issue taking *per stirpes* and not *per capita*.

"The share appropriated to the use of my son George under this clause shall be held by my remaining executrix and executors, but the investments of the same shall be made by and with the consent of my said son:"

It will be convenient, first, to consider the disposition made by the sixth paragraph of this will. As the wife of testator survived him, the provisions of this paragraph operated upon the one-half of his residuary estate. It also appears that one of the children of Henry Day, viz., Eliza D. Inglis, predeceased him, leaving no children. Henry Day left surviving him only three children, viz., Mrs. Parker, Mrs. McCormick and George Lord Day. The intent of testator, as expressed in the sixth paragraph, does not seem to be open to any serious question. Under the circumstances at his death, the one-half of the residuary estate thereby disposed of was to be divided by his executors into three shares. Each share was to be held by them in trust for one of the three children. The income of such share was to be paid to the child for whom it was held in trust during his or her life. Each child was also given a power to dispose of his or her share "by will or appointment" among "his or her or testator's lawful issue." In default of any will or appointment by such child, his or her share was given to the lawful issue of such child *per stirpes* and not *per capita*. In default of any issue of such child, author-

ity was given to him or her to dispose of $150,000 of such share to any person, and the remainder of the share was given to the lawful issue of testator then living, who were to take *per stirpes* and not *per capita.*

In *McCook* v. *Mumby,* '64 *N. J. Eq.* (*19 Dick.*) *394,* I had occasion to examine this paragraph in connection with the seventh paragraph of the will, whereby power was given to the executors, in their discretion, to advance and pay to George Lord Day, out of the share limited to his use, any sum not exceeding $100,000, and in connection also with the will of George Lord Day, whereby he gave to his executors, as trustees, all his property which was in his absolute ownership, and all which he had power to dispose of under the will of his father, to hold the same as a trust fund, and pay the income thereof to his widow, Adele Mittant Day (now Adele Mittant Mills) for her life, and with a provision for a disposition of the remainder after her death to his children or their children, and in default of any such surviving his wife, to the lawful issue then living of his father, to take *per stirpes* and not *per capita.*

My conclusion then was that by his will George Lord Day had exercised his power of appointment conferred on him by his father's will over the sum of $150,000 (he having died without children or grandchildren) by the devise and bequest of his estate, and whatever he was empowered to appoint, under his father's will, to trustees, to hold and invest as a trust fund, and to pay the income thereof to his wife for life, and at her death to pay the whole to the then surviving issue of his father, and that his gift operated upon the whole $150,000, notwithstanding there had been advanced to him out of the share limited to his use a large amount under the seventh paragraph of the will of Henry Day. The correctness of that conclusion does not seem to be questioned in this case, and upon the review I have been compelled to make I can see no reason to doubt it.

It results that with respect to the undistributed fund arising under the sixth paragraph of Henry Day's will the surviving executor is accountable for so much of the share of George Lord Day, under the sixth paragraph, as will make up the sum of $150,000, and that he must make payment of so much of said

sum, either directly to the executors and trustees under the will of George Lord Day or through the medium of the trustees of his share appointed under the will of Henry Day. To which of them the payment should be made will hereafter be discussed.

It also follows that the remainder of the share of George Lord Day, under the sixth paragraph, is to be paid by the surviving executor to Mrs. Parker and Mrs. McCormick, the issue of Henry Day living at the death of George Lord Day, who take the same *per stirpes,* unless the same is affected by the instrument executed by them and hereafter to be considered.

The shares of Mrs. Parker and Mrs. McCormick under this paragraph not accounted for or distributed, are to be paid to and held by the trustees for them respectively appointed by said will and codicil.

The questions presented under the fifth paragraph of the will of Henry Day are by no means so easy of solution. By its terms one-half of testator's residuary estate was given to his executors, not including his wife, in trust, to pay the income therefrom to his wife's use for her life, and upon her death "to divide the same among my lawful issue, or to trustees for their use, respectively, as my said wife shall direct by any last will, duly executed." There is then a provision that "in default of any such will" the said one-half of the said residuary estate shall go to the persons then entitled to the one-half which was disposed of by the sixth paragraph, to be distributed in the same proportions and held upon the same trusts and with like powers as are therein mentioned. There can be no question but that this paragraph constituted his executors, excluding his wife, who was an executrix, trustees of the one-half of testator's residuary estate, and that the surviving executor is the trustee, and is accountable therefor.

It is equally clear that by the provisions of the fifth paragraph Mrs. Day acquired no interest in the fund thereby placed in trust other than an interest for life in the net proceeds of the income thereof. But there was a superadded power of appointment of the fund, upon her death, of a limited character. *Wright* v. *Wright, 41 N. J. Eq. (14 Stew.) 382; Downey* v. *Borden, 36 N. J. Law (7 Vr.) 460.* Her appointment was re-

quired to be made by last will and testament, duly executed, and it was to direct a division thereof among testator's "lawful issue," or to trustees to their use, respectively. If she has made the required appointment, the surviving trustee must account to the persons to whom she has appointed and directed the fund to be paid; if not, the testator has otherwise disposed of the fund.

Mrs. Day died January 2d, 1895, leaving surviving her daughters, Mrs. Parker, and Mrs. McCormick, and her son, George Lord Day. Mrs. Parker had then, and has now, no children. George Lord Day had no children, and has since died, leaving no children. Mrs. McCormick had then, and has now, five children, who are parties to this suit, one of them being an infant.

Mrs. Day left a last will, duly executed, and which has been admitted to probate. It commenced with the following words:

"I, Phebe Lord Day, widow of Henry Day, of the city of Morristown, in the State of New Jersey, intending to dispose of all the estate, real and personal, of which I may be seized or possessed at the time of my decease or which I may be entitled to dispose of by will by virtue of any power of appointment in the will of my mother or of my said husband, do make and publish this my last will and testament, as follows:"

With this preamble she made a disposition, by the fifth paragraph of her will, which is in the following language:

"*Fifth.* All the rest, residue and remainder of my estate and other property which I am entitled to dispose of by will I direct my executors to divide into three equal parts. One of said three parts or shares I give to my executors, to hold as a separate trust for the benefit of each of my three children, Sarah, Susan and George, during his or her life, to invest the same and keep the same invested, and pay over the net income thereof (after deducting taxes, insurance premiums and all other lawful charges) to the child for whose benefit the same is held, and upon the death of such child, I give the principal of his or her share so held in trust to such person or persons as he or she shall direct by last will and testament, and in default of such last will and testament, then to the issue of such child *per stirpes*, and in default of such issue then to my issue *per stirpes*."

From this it seems clear that the purpose of Mrs. Day was to execute the power conferred upon her by the fifth paragraph

of the will of Henry Day. Although she has combined there-with a testamentary disposition of property which was her own, and a disposition by way of appointment under power conferred by the will of her mother, I think such a combination can in no way affect her testamentary action as an appointment under the fifth paragraph of Henry Day's will, if we can find therein a compliance with the requirement of that paragraph.

This compels the determination of the intent of Henry Day, as expressed by the fifth paragraph of his will. He was the donor of the power to appoint or direct a division of the fund and we must look to the language of his grant for the extent of the power conferred, and the limitations, if any, which he imposed on its exercise.

The first question suggested is whether the operative words conferring the power, viz., "as my said wife shall direct by any last will," &c., relate to and qualify the division of the fund among testator's lawful issue, or only those words which imme-diately precede, and which provide for the payment of the sums into which the fund is to be divided to such issue or to trustees for their use, respectively. The qualifying words are added to a single sentence. Testator did not require his trustees of this fund to divide it among his lawful issue and to pay the sums into which they divided it to each of his lawful issue, or to trus-tees to his or her use, as his wife should direct. But he required them to divide the fund among his lawful issue or to trustees for their use, as his wife should direct. In my judgment, he thereby conferred on her a power to direct what division should be made, and to whom the division was to be paid.

Nor am I able to discover any ground for the contention that the power conferred by the paragraph was in the alternative, so that if the widow directed, by her will, a division of the fund, she was without power to direct that the sums into which the fund should be divided should be, or some one of them should be, paid to trustees. On the contrary, the language, in my judg-ment, expresses an intent to confer power to direct a division, and also to direct the payment of the individual sums either to the persons selected or to trustees for their use.

When this cause was first argued the guardian *ad litem*

of the infant defendant (who is a grandchild of Henry Day, whose mother is yet living) urged (1) that by the words "lawful issue," in the fifth paragraph of his will, Henry Day must be considered to have intended to include his grandchildren as well as his children, and (2) that if such was his expressed intent the appointment attempted to be made by the will of his widow was ineffective and invalid, and because of the default of a will making the required appointment the bequest over took effect.

No such contention was made by counsel for the adult grandchildren, nor was the question discussed in the able arguments submitted by the counsel for the other parties.

When I took up the will for consideration I was greatly impressed by the fact that Henry Day, who was a lawyer of great reputation, in framing the sixth paragraph of his will, and providing for the disposition of the fund thereby created, in certain eventualities, to the lawful issue of his children or of himself, had taken care to express that such issue should take *per stirpes* and not *per capita.* Such a disposition, it cannot be doubted, would have excluded from any benefit thereunder the descendants of any living *stirps.* When the testator, in framing the fifth paragraph of his will, made a disposition of the fund thereby created, upon the death of his wife, to his "lawful issue," without any qualifying phrase, the omission seemed to me to be so significant in respect to his intent as to justify me in requiring a reargument, and I have had the benefit thereof.

The question thus presented is whether Henry Day intended, by the words "my lawful issue," as used in the fifth paragraph, to include all his lineal descendants living at the time the will took effect, or at the time the power was to be exercised, or only his children then living, or his children then living and the representatives of any deceased child.

The word "issue," in its ordinary legal meaning, embraces grandchildren and remoter descendants, as well as children. When used in deeds, it has been adjudged to have a technical sense to that effect. *Weehawken Ferry Co.* v. *Sisson, 17 N. J. Eq. (2 C. E. Gr.) 475.* But when used in a will a more restricted meaning may be attributed if, from the terms of the testamentary

disposition, it clearly appears that the testator used the word in a particular meaning less general than its ordinary meaning. *2 Wms. Ex. 953; Sibley* v. *Perry, 7 Ves. 531; ·Leigh* v. *Norbury, 13 Ves. 340; Dalzell* v. *Welch, 2 Sim. 320; Emans* v. *Emans, 3 N. J. Law (2 Penn.) 968; Den* v. *Schenck, 3 N. J. Law (3 Halst.) 39; Ballentine* v. *De Camp, 39 N. J. Eq. (12 Stew.) 87.*

To properly pursue this inquiry, it is obvious that we must start with the assumption that the testator used the word in its ordinary signification. We must then examine the whole will, and we will not be able to attribute to the word a more restricted meaning unless we find in the will itself clear indication that the testator used it in this case in such restricted meaning.

It is argued that by the word "issue" the testator could not have intended to include his grandchildren as beneficiaries under the appointment of his widow, because by this paragraph he provided that on failure to appoint the fund is immediately to go to trustees, under the sixth paragraph, whereby the grandchildren will not obtain an immediate, but only a remote and precarious interest. But this reasoning is founded not on any expression of the testator, but rather upon our judgment of what would have been expressed by him if he had intended to include grandchildren under the word "issue." It is by no means clear that if such was his intent that he did not consider the provision made, on failure of appointment, whereby the grandchildren might attain a future interest in the fund, a sufficient and satisfactory benefit to them.

If we are to draw an inference that testator intended to restrict the meaning of the word "issue" in this paragraph, it cannot be an accepted inference unless the degree of restriction is expressed thereby. The inference sought to be drawn from the omission of the grandchildren from some immediate benefit on failure of appointment leaves the degree of restriction wholly undisclosed. Whether only children of testator living at the death of the donee of the power or such children and the issue of deceased children are objects of the power, is left to mere conjecture. The latter conjecture is forbidden by the comparison of the provision whereby testator has made *stirpital*

disposition, with the provision which is without qualification. The former conjecture assumes, without any supporting ground, that testator intended that his grandchildren should take no interest in the fund created by paragraph 5, even if their parent was dead before the power of appointment was exercised.

Upon consideration of the whole will, I am unable to discover in it any reason for attributing to the word "issue," in the fifth paragraph, any restricted meaning. It therefore includes testator's grandchildren, although children of a living child.

That the power of division conferred on testator's widow by paragraph 5 was not exclusive, *i. e.,* did not permit her to exclude from such division any of the objects of the appointment, was not contested by any of the counsel. The doctrine of exclusion, and the instances in which it is applicable, need not be here discussed. See *Sugd. Pow. ch. 7 § 6; Chance Pow. pp. 1013, 1055 et seq.* As the grandchildren were wholly excluded and appointed to no substantial part of the fund, the questions so much discussed elsewhere respecting what are termed illusory appointments do not require attention. *Sugd. Pow. ch. 7 § 6, app. 19; Chance Pow. pp. 1108, 1115.*

The construction given to paragraph 5 makes it include as objects of the appointment thereby conferred on Mrs. Day the three living children of testator and the five then living children of Mrs. McCormick. But Mrs. Day, by her will, in attempting to exercise the power conferred, ignores the grandchildren and excludes them from any benefit. It is settled in this court that such an exclusion makes the execution of the power invalid.

In *Lippincott* v. *Ridgway, 10 N. J. Eq. (2 Stock.) 164,* Chancellor Williamson dealt with a will whereby the testator conferred power upon a daughter to appoint a trust fund, under circumstances which came into existence, to such of her brothers and sisters and their children, and in such proportions as the daughter by her will should direct and appoint. This language, if standing alone and unexplained, conferred upon the daughter a discretion to select among the persons named. But it was followed by language explaining that testator's will was that the daughter should have power to dispose of the fund among

the brothers and sisters and their children in such proportions as she should think fit. This explanatory clause was held by the learned chancellor to limit the powers conferred so that each of the brothers and sisters was entitled to a portion of the fund. It appearing that the daughter, by her will, had excluded a sister and had appointed the fund to a child of a sister who had deceased, the conclusion was reached that there had been no valid execution of the power conferred, and that the gift over took effect.

In *Wright* v. *Wright, 41 N. J. Eq. (14 Stew.) 382*, Chancellor Runyon dealt with the will of a husband giving all his property, real and personal, to his wife, with power to dispose of the same in any manner she should think proper during her lifetime, and providing that at her death she might by will dispose of the same among his children and grandchildren as she should think proper. The learned chancellor held that the wife took only a life interest, with power of testamentary disposition among testator's children and grandchildren, but without power to exclude any of them. It was concluded that a will of the wife, which excluded one of the grandchildren from any share, was an invalid appointment under the power conferred.

It being determined that the gift over took effect, the next question is, to whom must the trustees account for the fund which was created by the fifth paragraph of Henry Day's will? The gift over is expressed in the following language, viz.:

"In default of any such will [of Mrs. Day], I give the same [the fund] to the same persons who shall then be entitled to the other undivided half of the said residuary mentioned in the next clause of this will [*i. e.*, the sixth paragraph], to be divided in the same proportions and held upon the same trusts and with like powers as are therein mentioned."

At the death of Mrs. Day the fund created under paragraph 6 was in the hands of trustees for the benefit of the three children—Mrs. Parker, Mrs. McCormick and George Lord Day. All were then living, and by the gift over, under the fifth paragraph, the one-half of the residuary estate therein disposed of was vested in the trustees for the benefit of those three children, to each one a third thereof. As Mrs. Parker and Mrs. Mc-

Cormick are still living, their shares must be held by the trustees for each of them, respectively, to be disposed of at their deaths under the powers and with the restrictions named in the sixth paragraph.

A different and more difficult question arises with respect to the one-third of this fund which, at Mrs. Day's death, the trustees were to hold for the benefit of George Lord Day. He has since died, leaving a widow, but no children. He died testate, and by his last will made a disposition of property in the following language:

"All other property of which I shall be seized or possessed at the time of my death, whether such property be real or personal, and whether it shall be mine in absolute ownership or held in trust for my benefit by trustees under the will of my father or my mother, with powers granted to me to dispose thereof by my will, I give (intending hereby to exercise the said powers of disposition by my will) to my executors hereinafter named (acting as trustees), to have and to hold, unto them, their successor or successors, upon the following trusts, viz.:

"To invest the same and keep the same invested as a trust fund, and to hold the capital of said trust fund during the life of my wife, Adele Mittant Day, and to pay over to her the net income thereof (after deduction of all necessary and proper expenses of said trust) in equal quarterly or semi-annual payments, according as my said wife shall desire; and upon the death of my said wife to pay over the capital of said trust fund, in equal shares. to any child or children of mine, and any child or children of any deceased child or children of mine, who shall be living at the decease of my said wife, such children and grandchildren to take *per stirpes* and not *per capita;* and if but one child of mine and no grandchildren, or but one grandchild and no children, shall survive my said wife, then upon the death of my said wife to pay over the entire capital of said trust fund to such child or grandchild.

"Should no child or children, grandchild or grandchildren of mine survive my said wife, then upon the death of my said wife I give the entire capital of said trust fund to the issue, then living, of my father, Henry Day, such issue to take *per stirpes* and not *per capita.*"

In the case of *McCook* v. *Mumby, ubi supra,* it was held that George Lord Day thereby exercised such power as had been conferred upon him by the sixth paragraph of the will of Henry Day with respect to a part of the fund created by that paragraph. No consideration was then required or given to the power conferred with respect to the fund created under the fifth paragraph, which is now under consideration. Upon

failure of appointment, the fund under that paragraph was to be held by trustees upon the trusts created by the sixth paragraph. With respect to the share of George Lord Day in the fund, created by the sixth paragraph, it was then held that power was conferred upon him to appoint, in case of his death without children, $150,000 of the fund to any person he should see fit, and that by his will directing the property which he had power to dispose of under his father's will to be held in trust for his wife, Adele Mittant Day, during her life, and at her death, if there were then no children or grandchildren of his living, the whole fund to go to the issue of Henry Day then living, such issue to take *per stirpes* and not *per capita,* he exercised the power of appointment validly and effectually as to the $150,000 over which his power extended as to persons not his father's issue by the provisions for the use by his wife for life, and as to that sum, after her death, by the appointment thereof to his father's issue, which was also within the power conferred upon him.

By the failure of appointment by Mrs. Day as to the fund created by the fifth paragraph and the consequent gift over, that fund is to go to trustees for the persons named in the sixth paragraph. It is expressly directed to be distributed in the same proportions and to be held upon the same trusts and with like powers as are mentioned in the sixth paragraph.

Therefore, upon the death of Mrs. Day without having made a valid disposition by way of appointment of the fund created by the fifth paragraph, it became the duty of Henry Day's executors to divide that fund into three equal shares, one for each of his children then living, viz., Mrs. Parker, Mrs. McCormick and George Lord Day, and to pay over each of such shares to the trustees, respectively, appointed by Henry Day's will and codicils for each of said children. Those trustees were to hold such shares upon the trusts set forth in the sixth paragraph.

As Mrs. Parker and Mrs. McCormick are still living, their respective shares are to be held by their respective trustees upon those trusts.

George Lord Day has died, but leaving a will disclosing an

intent to thereby appoint whatever he was empowered to appoint by Henry Day's will to trustees to the use of his wife for life. By the sixth paragraph he was endowed with power to appoint, in default of issue, $150,000 to any person he should see fit. This has been already held to empower him to appoint to the use of his wife for life $150,000 out of the fund arising under the sixth paragraph. As the fund arising under the fifth paragraph is to go upon the same trusts with like powers, it follows that he had a power of appointment as to $150,000 of that fund, and to that extent his will has executed that power.

But he also had power to appoint to his own or his father's issue, and his will has executed that power as to the $150,000 after his wife's death. It follows that $150,000 out of the fund created by the fifth paragraph is to be paid to trustees appointed by his will, and to be held by them on the trusts therein created, and the remainder of the share is to be paid to Mrs. Parker and Mrs. McCormick, Henry Day's lawful issue, taking per stirpes.

There are two questions remaining to be considered. The first is as to the effect to be given to an instrument alleged to have been executed by Mrs. Parker and Mrs. McCormick, and which is set up by the answer and cross-bill of Mrs. Mills, the widow of George Lord Day.

As has been stated, the funds created by both the fifth and sixth paragraphs, after the death of Mrs. Day, and in default of her making an appointment within the power conferred on her by the fifth paragraph, are held by the trustees under the will and codicils of Henry Day, upon the trusts declared in the sixth paragraph. One-third thereof was held for George Lord Day for life, with power of appointment to the extent of $150,000 out of each fund, which power he executed by his will in favor of his wife for life, and at her death in favor of the lawful issue of his father, Henry Day, living at his wife's death.

The share of George Lord Day in excess of his appointment went, at his death, to the lawful issue of Henry Day, then living, per stirpes and not per capita.

At the death of George Lord Day, Mrs. Parker and Mrs. McCormick were then the surviving children of Henry Day; each

was a *stirps* or root. If either had then died leaving children, lawful issue of Henry Day, those children would have repre-sented the deceased, and taken the share of the excess which the deceased would have taken if living. But as both children sur-vived George, each took a share of the excess absolutely. What each thus acquired, she could dispose of as she saw fit.

The cross-bill of Mrs. Mills has appended to it an instrument alleged to transfer the interest which Mrs. Parker and Mrs. McCormick thus acquired in the share of George Lord Day, unappointed by him to trustees for the use of Mrs. Mills for her life. She also appends to her cross-bill another instrument purporting to be executed by the children of Mrs. McCormick and making a similar transfer for her benefit.

The answers to this cross-bill fail to admit or deny the execu-tion of these instruments. When the cause was brought to final hearing before me counsel for Mrs. Mills produced and proved the execution of the first-mentioned of these two instruments. The other was not produced or proved.

There was no exception to the answers to the cross-bill of Mrs. Mills for insufficiency in respect to the allegations respecting these instruments. No proofs were taken in accord with the usual practice in this court. The proof offered at the hearing was objected to and was taken subject to objection.

Is that instrument thus presented at the final hearing ad-missible, and is it to be considered in the determination of this case?

By section 45 of the Chancery act of 1874, all examinations, after a cause was at issue, were to be taken before an examiner in chancery, except such examination as should be taken before a vice-chancellor in an issue referred to him. By section 33 of the Chancery act of 1902 (*P. L. of 1902 p. 521*), this exception was extended so as to exclude from the requirement to take examinations before an examiner such examinations as should be taken before the chancellor. By section 109 of the last-cited act the chancellor was authorized to employ a stenographer when he should take and hear evidence of witnesses orally. The plain purpose of this legislation was to enable the chan-cellor to adopt, in any case, the practice of hearing causes at

issue by oral evidence, as the vice-chancellors are expressly required to do. But it has never been interpreted, nor do I think it bears the meaning, that parties may come to a final hearing and then require the chancellor, without any previous direction on his part, to hear evidence orally. When application for that purpose is made upon notice he may direct such a mode of trial, but without an application and direction thereon evidence ought not to be received orally. Any other course would occasion surprise to the other parties.

Under these circumstances, I think the objection made to the reception of this evidence required it to be dismissed from consideration. It may well be questioned, besides, whether the charge in the cross-bill of Mrs. Mills respecting these instruments called for an answer. They seem to be referred to solely as recognizing the power of disposition which the cross-bill claims had been conferred on George Lord Day. For these reasons no consideration has been given to the proof on this subject.

The only remaining question is to whom the surviving trustee under the will of Henry Day should account and pay over the trust funds in his hands. With respect to so much thereof as under the construction given heretofore is to be held in trust for Mrs. Parker and Mrs. McCormick for their lives, respectively, no difficulty can arise. They are to be held by the respective trustees appointed by the codicils to the will of Henry Day, or such persons as now, by proper appointment, have been made trustees thereof. With respect to the excess of the share of George Lord Day arising under both paragraphs 5 and 6 over and above what he has appointed thereout, that is to be divided and paid over to Mrs. Parker and Mrs. McCormick, respectively.

The shares of the funds arising under both paragraphs, which were put in trust for George Lord Day for life, with a limited power of appointment, which as to $150,000 out of each fund he exercised by creating a trust of those amounts in favor of his wife for life, and, at her death, failing his own issue, in favor of the then living lawful issue of his father, Henry Day, are also to be paid over.

It appears, and is conceded, that the trustees under Henry Day's will, of whom the complainant is the survivor, have not paid over the whole amount of the shares under paragraph 6 to the respective trustees thereof. George Lord Day being dead, if the unpaid balance of his share were now paid to his trustees, it would be their duty to immediately pay over $150,000 out of the same, or so much thereof as is unpaid, to the trustees to whom the same was appointed by his will for the benefit of his wife for life. With respect to the fund created under paragraph 5, it is left uncertain whether that fund was ever segregated from the estate by the executors and trustees. If not, upon its being now done, the surviving trustee would be under obligation to pay such share thereof as, under the construction heretofore declared, was given for the benefit of George Lord Day for life, to his trustees, appointed under the codicils, and it would then be their duty to pay $150,000 out of the same to the trustees appointed by George Lord Day by his will. These successive trustees would be charged with no duty except that of paying over the funds to the trustees appointed by the will of George Lord Day. They might, however, be entitled to demand, and possibly to receive, commissions upon these funds. To adopt a circuitous course of payment through successive trustees might open a way to a demand to two or three successive commissions for services which, upon the construction given, would be merely perfunctory.

Under such circumstances, and as all the successive trustees are parties to this suit, it is my judgment that the payment may be made directly to those now entitled to receive the same.

A decree embodying the conclusions above expressed will be made. Considering the many questions passed upon, I think the terms of the decree should be settled upon notice.