All of the parties hereto ask a judicial construction of the last will and testament of Mary H. Thomas, deceased, and particularly of the tenth paragraph of that instrument. That paragraph reads:
"Tenth: I give, devise and bequeath to my cousin, George Mayo, Sr., the property known and designated as No. 812 Kaighn Avenue, Camden. New Jersey, together with the undertaking business, garage, autos, and all the paraphernalia connected therewith and all the furniture and contents therein, to have and to hold the same during his natural life, with the condition that he keep the said property in *Page 231 
good condition at his own expense; and from and after his death I give, devise and bequeath the said property, mentioned in this paragraph of my will to George Mayo, Jr., with the condition that he keep the said property in good condition at his own expense; and from and after his death, I give, devise and bequeath the property to the Frances Harper Branch of the Young Women's Christian Association, of Camden, New Jersey, absolutely and in fee, in memory of my deceased husband, Walter H. Thomas, and myself."
The life tenants, George Mayo, senior, and George Mayo, junior, are both dead. George Mayo, junior, predeceased George Mayo, senior; the latter died March 6th, 1947. The complainant claims identity with "Frances Harper Branch of the Young Women's Christian Association, of Camden, New Jersey," and prays a construction and a decree confirming its claim and its right to take the real and personal property devised and bequeathed to its so-called branch. The defendant Annie Murrelle is the executrix of George Mayo, senior, deceased, and the sole beneficiary under his will. The remaining defendants are the children of Carter Johnson, deceased, for whom, by the eleventh paragraph of her will, the testatrix created a trust of the residue of her estate.
Complainant is a non-profit, religious and educational corporation. It has functioned as such in the City of Camden since its creation, January 31st, 1907. Its purposes are thus defined in its charter:
"2. That the purposes for which it is formed are to promote the well-fare, spiritually, mentally, socially and physically, of the young women of the City of Camden, New Jersey.
"(a) By establishing and conducting religious services.
"(b) By establishing and conducting schools and classes in various branches for educational purposes, but not for pecuniary profit;
"(c) By establishing and maintaining a gymnasium with all the necessary outfits and appurtenances incident or necessary to the proper physical development of the members of this association."
There is no incorporated or unincorporated association bearing the name "Frances Harper Branch of the Young Women's Christian Association, of Camden, New Jersey." That title was created by the complainant in 1920 to designate special work it was then undertaking for the benefit of girls and young women of the negro race in Camden. When *Page 232 
complainant rented 822 Kaighn Avenue, Camden, for that work, the title was also applied to the property. The work and the building have always been financed and controlled by complainant, and supervised by its executive director. And, ever since the inception of the "Branch," complainant has allocated two places on its board of directors to women of the negro race, has had the assistance of an advisory committee of negro women, and has maintained a trained director, a negress, at 822 Kaighn Avenue.
When the complainant began to use 822 Kaighn Avenue as a Young Women's Christian Association center for negro girls and young women, Mrs. Thomas became interested in the project. Later, she served as a member of complainant's advisory committee. This committee met regularly at 822 Kaighn Avenue with the directress and with complainant's executive director, received and discussed reports of the operation of the Branch and of the work being there conducted, and made recommendations. Thus, the testatrix must have come to know that the "Frances Harper Branch" was, in fact, a branch of the complainant's religious and educational work, that it was financed and controlled by the complainant, and the cost of its operation.
Walter H. Thomas, the husband of the testatrix, was a successful negro funeral director. On May 11th, 1915, he purchased a dwelling at 812 Kaighn Avenue, and the adjoining lot, 814 Kaighn Avenue; title was taken in the name of the testatrix, Mary H. Thomas. In June, 1915, the dwelling was remodeled to provide an office and funeral parlors on the ground floor, and an apartment above for the occupancy of Mr. and Mrs. Thomas. The remains of an old frame dwelling which had been numbered 814 Kaighn Avenue, were removed. April 23d 1929, a third lot, 816 Kaighn Avenue, was purchased by Mrs. Thomas; the remains of another frame dwelling were removed. August 1st, 1921, a large cement block garage was erected across the rear of the first two lots purchased, and April 6th, 1934, the testatrix had a morgue constructed across the rear of the third lot purchased. Subsequently, she added to the remodeled dwelling an additional room fronting on Kaighn Avenue and used it as an office *Page 233 
and she planted a flower garden in the space between the street and the morgue; finally, the testatrix had all of the remaining vacant land in the three lots paved with concrete.
Walter H. Thomas died in about the year 1924. Mrs. Thomas continued to live in the apartment and, with the assistance of her cousin, George Mayo, senior, continued to conduct the business. Mr. and Mrs. Thomas had had no children. After the death of Mr. Thomas, Mrs. Thomas took her cousin's son, George Mayo, junior, into her home, and into her business as "an apprentice." She also had him begin a course of study designed to qualify him to become a licensed funeral director. Later, when Mrs. Thomas came to make her will it was natural, therefore, that she should wish to favor her cousin and his son. Her will reveals the fact that she also wished to create a permanent memorial to her husband and to herself. What then more logical, the surrounding circumstances considered, than for Mrs. Thomas to conceive of the establishment in her property of complainant's Frances Harper Branch and of helping it to improve and expand its service to the girls and young women of her race?
It is the contention of the defendants that the tenth paragraph of the decedent's will concerns only one of the three city lots of which she died seized — the lot originally purchased as 812 Kaighn Avenue. The expressed intent of the testatrix, they argue, was to give a life estate in that lot to George Mayo, senior, then a life estate to George Mayo, junior, and finally, the fee to "Frances Harper Branch of the Young Women's Christian Association, of Camden, New Jersey." Decedent's two remaining lots, they say, not having been specifically mentioned, became a part of the residue of decedent's estate. They further contend that all of the personal property mentioned in the tenth paragraph was either given to George Mayo, senior, absolutely, or to George Mayo, senior, for life and then to George Mayo, junior, absolutely. The defendants suggest that, as the testatrix made her gift over of the city lot to a charity named but unqualified to hold real estate, a corporation should be organized with that name and the city lot decreed to be vested in it. Such a construction of the tenth paragraph is illogical and unsound. *Page 234 
From the time they were assembled, all three of the city lots have been used as a single residence and business property. The dwelling at 812 was remodeled and the adjoining lot cleared during the life of Mr. Thomas; Mr. Thomas also caused a garage to be built across the rear of lots 812 and 814; the morgue was built by the testatrix at the rear of lot 816 and the balance of that lot planted with flowers and shrubbery; the office addition she built entirely on lot 814, but joined it to the remodeled dwelling by an arch cut through the dividing wall; the testatrix had a fence erected across the front of lots 814 and 816, including large gates; the remaining land in all three lots she paved with concrete; and lot 814 became the driveway and vehicular parking place and, the only space available to reach and make use of the garage and morgue.
Decedent's will was executed May 1st, 1937. All of the improvements I have described (with the possible exception of some minor extension of the garage) had been completed before that date and, on that date, the entire property was being used by the testatrix in her business. Only one street number appeared upon the property, the number "812." That number had, at some earlier time, been placed above the entrance to the dwelling. When Mrs. Thomas erected the office addition to the main building she gave it a separate entrance from Kaighn Avenue. It is not suggested that this addition ever bore the number "814," nor did the morgue, which she erected, ever bear the number "816." In operating the business, the address always used by Mr. Thomas and by the testatrix was 812 Kaighn Avenue. I am convinced that the testatrix regarded her three city lots and all the improvements thereon as one property, and that she identified that property in her mind and in her will as 812 Kaighn Avenue. Assuredly, the testatrix would not have given her "undertaking business, garage, autos and all the paraphernalia connected therewith and all the furniture and contents therein," to her cousin and assistant, George Mayo, senior, for life, and then to his son. George Mayo, junior, for life, and limited them to the use of this one lot. There would be implicit in such a gift, a closing of the archway between the main building *Page 235 
and the brick addition, loss of use in the business of the office, the morgue, the paved driveway and yard and of the garage. If, upon the death of the testatrix, the lots 814 and 816 had been separated from lot 812, George Mayo, senior, would have had the use of a hearse and automobiles and no place to store them, of one-half of the garage and no driveway to and from it, and of morgue equipment but not of the morgue. The will did not say that Mr. Mayo was to have the use, for his life, of half a garage; it said that he was to have the garage.
It is significant that the will before the court was drafted by an attorney and that technical, legal words were employed. Whatever the quantity or identity of the property given to George Mayo, senior, George Mayo, junior, and to the Frances Harper Branch of the Young Women's Christian Association of Camden, New Jersey, it unquestionably was intended to include property both real and personal. In each instance, the words used were "give, devise and bequeath." The will was drawn by an attorney, and the attorney used technical legal words. "Technical legal words in a will are to be given their technical legal meanings, * * *."Apgar v. Hoffman, 113 N.J. Eq. 233; 166 Atl. Rep. 159. See, also, Inglis v. McCook, 68 N.J. Eq. 27; 59 Atl. Rep. 630.
The gift of the testatrix to "Frances Harper Branch of the Young Women's Christian Association, of Camden, New Jersey" created a charitable trust. In re Young Women's ChristianAssociation (Court of Chancery), 96 N.J. Eq. 568;126 Atl. Rep. 610. It is not surprising, therefore, that in our effort to construe decedent's will, we should encounter some uncertainty as to the trustee intended to administer the trust and as to the property intended to be given for trust purposes. "Vagueness is to be found in almost every charitable trust." Noice v.Schnell (Court of Errors and Appeals), 101 N.J. Eq. 252,264; 137 Atl. Rep. 582. But, "If the intention be charity, the court will execute it, however vaguely the donor may have indicated his purpose." Attorney-General v. Haberdasher's Co.,1 My. K. 421; 39 Eng. Reprint 741. In all matters of construction, where such uncertainty arises, courts are bound to lean in favor of charity rather than against it. Hesketh v.Murphy (Court of Errors and Appeals), 36 N.J. Eq. 304, 309. *Page 236 
A further rule for the construction of wills has been laid down for the guidance of courts where indefiniteness is encountered. "`For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.'" Vice-Chancellor Wigram on ExtrinsicEvidence in the Aid of Interpretation of Wills, p. 142, quoted in Noice v. Schnell, supra (at p. 272 of the state report).
When the testatrix made her gift of real and personal property to the "Frances Harper Branch of the Young Women's Christian Association, of Camden, New Jersey," she unquestionably, intended a gift to the complainant in trust for use in the special work being prosecuted by it under that title. It is not reasonable to suppose that the testatrix, when she made her will, contemplated the formation of a corporation to take the name being used by the complainant in order that it administer the trust. If consent could have been obtained for the use of the name, practical considerations would, I am certain, have persuaded Mrs. Thomas, a business woman, to reject such a plan. She knew the value of her possessions, she must have known that it was costing the complainant about $7,500 annually to rent and operate 822 Kaighn Avenue, and she would have realized how impossible it would be to adapt her real estate for such use and to so staff and maintain a center with the proceeds of her personal property as to render a service comparable to that already being rendered by the complainant. She certainly would not have favored a plan to establish a memorial foredoomed to failure. The misnomer is immaterial; the intention of the testatrix will prevail.Goodell v. Union Association, c., of Burlington Co. (Courtof Chancery), 29 N.J. Eq. 32; Christian v. Catholic Church,c. (Court of Chancery), 91 N.J. Eq. 374; 110 Atl. Rep. 579;New Jersey Title and Guaranty *Page 237 Trust Co. v. Smith (Court of Chancery), 90 N.J. Eq. 386;108 Atl. Rep. 16; Fidelity Union Trust Co. v. Laise (Court ofChancery), 127 N.J. Eq. 287; 12 Atl. Rep. 2d 882.
The right of the complainant to maintain this suit has not been challenged and, as between the parties, it has been fully heard and determined. There is, however, an obvious insufficiency which the court may not overlook and which must be supplied before a decree will be advised. The Attorney-General is not a party to the cause. "The rule is that where property affected by a trust for public purposes is in the hands of those who hold it devoted to that trust, it is the privilege of the public that the state be entitled to intervene by its officers for the purpose of asserting on behalf of the public generally the public's right and interest." Larkin v. Wikoff, 75 N.J. Eq. 462;72 Atl. Rep. 98; affirmed, 77 N.J. Eq. 589; 78 Atl. Rep. 1134.
This cause was instituted by the corporation designated to administer a public trust. All of the individuals and personal representatives of individuals who might have a direct interest in the subject-matter of the suit were made parties defendant, but the real, substantial and beneficial owners designated to benefit by the public trust have not been heard. They are the girls and young women of the negro race of the City of Camden and vicinity. The Attorney-General, representative of the public at large, is also the proper representative of this fluctuating group. He is an indispensable party to this cause. Lanning v.Commissioners of Public Instruction (Court of Chancery),63 N.J. Eq. 1; 57 Atl. Rep. 787; MacKenzie v. Trustees ofPresbytery (Court of Errors and Appeals), 67 N.J. Eq. 652;61 Atl. Rep. 1027; Larkin v. Wikoff, supra; Green v. Blackwell
(Court of Chancery), 35 Atl. Rep. 375 (not reported in the state report); Trustees of Princeton v. Wilson (Court ofChancery), 78 N.J. Eq. 1; 78 Atl. Rep. 393.
If the Attorney-General, after he has been made a party hereto, shall be satisfied that a correct conclusion has been reached, he may file a formal answer and submit to the judgment of the court. If, however, he shall file a litigious pleading, the case will be opened to afford him an opportunity to take proofs and be heard. *Page 238