ARTHUR S. BROOKS, complainant,

v.

NATHANIEL S. GOFF, defendant.

[Decided January 10th, 1940.]

Mr. *Harold A. Horowitz* (*Mr. E. George Aaron,* of counsel), for the complainant.

Mr. *Augustus S. Goetz* (*Mr. Robert K. Bell,* of counsel), for the defendant.

SOOY, V. C.

Complainant, as surviving executor and trustee under the will of Sara F. Goff, seeks to enjoin Nathaniel S. Goff, decedent's surviving husband, from interfering with complainant in the performance of his duties in the due administration of the assets, real and personal, of decedent's estate. Such interference as has been interposed by the defendant Goff arises by reason of divergent constructions placed upon the will aforesaid and complainant seeks the aid of this court in the construction thereof in order that the rights of the parties may be ascertained and settled.

Mrs. Goff died February 24th, 1939, leaving little personalty but some valuable real estate. She married Mr. Goff in September of 1935, being then a widow of the age of sixty-

one years, while Mr. Goff was then sixty-eight years of age. She had no children of either marriage. Her nearest next of kin is her brother, Leon A. Brooks. Complainant is his son, hence decedent's nephew. Mr. Goff has brothers and sisters.

The beneficiaries named in those sections of the will which are the subject of dispute are, in 9 (a), Nellie Conover, Florence Clark and Annie Overholser, who are sisters of decedent's first husband, and Arthur S. Carman, a nephew of decedent through her first marriage.

The beneficiaries named in 9 (b) are Leon A. Brooks, decedent's brother, Hanna F. Haney and Florence L. West, nieces, and Arthur S. Brooks, a nephew.

The will itself, in the first seven paragraphs thereof, directs the payment of debts as well as funeral expenses, provides for the erection of a monument and for the care of cemetery lots, and divides decedent's clothing, bequeaths her diamond engagement ring to her present widower, divides jewelry and makes a bequest to the First Presbyterian Church of Millville of $1,000.

It is the eighth and ninth clauses of the will with which this court must deal:

"*Eighth.* If my husband, Nathaniel S. Goff, is living at the time of my decease, I direct that a proper and sufficient allowance shall be taken from the income from my estate for the proper maintenance and care of my said husband, Nathaniel S. Goff at the discretion of my executors hereinafter named.

(a) At the time of the decease of my husband, the said Nathaniel S. Goff, any allowances shall cease and divert into my estate.

*Ninth.* In case my husband, Nathaniel S. Goff, should predecease me, I then give, devise and bequeath all of my estate, residue and remainder both real and personal to my executors to hold and maintain in trust.

(a) I devise and bequeath the sum of One Thousand ($1,000.00) Dollars each to Nellie Conover, Florence Clark, Annie Overholser and Arthur S. Carman. This is to be paid as soon as the income from my estate will permit and shall be at the discretion of my executors hereinafter named.

(b) The remainder and the revenue derived from .my estate shall be distributed equally among my brother, Leon A. Brooks, my nieces, Hanna F. Haney and Florence L. West and my nephew, Arthur S. Brooks."

At about the time the will was executed and up to the death of testatrix, Mr. Goff had been under the care of physicians and for a time was receiving treatment in the Cumberland County Insane Asylum. However, there is no evidence that Mr. Goff was insane and I only refer to this situation in order that I may put myself, as nearly as may be, in the position of the testatrix when she executed her will.

Without considering the contention between the parties as to the proper construction of the will, it definitely appears that not only did the testatrix have in mind that her husband should be taken care of if he survived her, but she desired that her relatives through her first marriage should benefit thereunder as well as her own brother and her nieces and nephews of her own blood line, and the question is whether or not the will may be so construed that these beneficiaries may take thereunder.

The contention of the defendant widower is that testatrix died intestate as to her residuary estate left after his death and after he has had the benefit of the limited life estate created in the eighth paragraph of the will. His contention is that the ninth paragraph of the will never became operative in so far as (a) and (b) paragraphs are concerned because those paragraphs are dependent on the first clause of the ninth paragraph, which provides for a contingency that did not happen, to wit, the death of Nathaniel S. Goff before testatrix.

The contention of the complainant is that the contingency mentioned in the first clause of the ninth paragraph not having happened, that subdivisions (a) and (b) are to be considered as separate paragraphs and not dependent in any way upon the first clause of the ninth paragraph. In other words, that subdivisions (a) and (b) of the ninth paragraph are to be considered as if they were separate paragraphs, independent of the first clause, and numbered 10 and 11. If this latter contention be upheld, the finding would be that under the eighth paragraph of the will Mr. Goff had a limited life estate for the term of his natural life and that at his death the *corpus* of the estate, together with accumulated income, would go, under paragraphs 10 and 11 as therein indicated,

and the result would be that testatrix would have disposed of her entire estate and had not died intestate as to any portion thereof.

A reading of paragraphs 8 and 9 as written demonstrates that the scrivener of the will, whom I take to have been testatrix herself, was not possessed of a proper conception of the use of punctuation and paragraphing and that she was not versed in the law, and the will indicates that she probably used a form in the preparation thereof, which she was able to follow until she came to the eighth and ninth paragraphs.

It is obvious, it seems to me, that if testatrix had not attempted to subdivide either paragraph 8 or paragraph 9 there could be no difficulty in the construction of the will and that a consecutive paragraphing would have eliminated paragraph 8 (a) and substituted paragraph 9, and that the ninth paragraph would have been paragraph 10, and 9 (a) would have been paragraph 11, and 9 (b) would have been paragraph 12.

There are various legal principles that must be kept in mind in arriving at a proper construction of decedent's will. The fact that it was drawn by one unskilled is to be considered. *Wunderlich* v. *Bleyle, 96 N. J. Eq. 135; 125 Atl. Rep. 386.* The court should put such a construction on apparently conflicting parts of the will that all of them, if possible, may stand, and the whole will be carried into effect. *Den, ex dem. Somers* v. *Pierson, 16 N. J. Law 181.* "A will should not be construed so as to produce either complete or partial intestacy unless such intention is clear; a well established presumption is that when a will is executed the testatrix intends to dispose of her entire estate and does not intend to die intestate as to any part of her property. * * * The law abhors intestacy and it is the duty of the court to sustain a will if there is any way in which it can do so reasonably." *Parmentier* v. *Pennsylvania Co., &c., 122 N. J. Eq. 25* (at p. 30); *192 Atl. Rep. 62; affirmed, 124 N. J. Eq. 272; 1 Atl. Rep. (2d) 332,* quoting from *Second National Bank and Trust Co.* v. *Borden, 113 N. J. Eq. 378* (at p. 381); *167 Atl. Rep. 224.* The presumption against an intestacy is particularly strong where the subject of the gift is the residuary

estate. *Danker* v. *Cooper, 114 N. J. Eq. 283* (at *p. 285*); *168 Atl. Rep. 640,* and *Carter* v. *Gray, 58 N. J. Eq. 411; 43 Atl. Rep. 711,* in which Vice-Chancellor Grey said:

"When the question presented requires the construction of a residuary clause, the courts have a strong disposition so to interpret it as to prevent an intestacy with regard to any part of the testator's property, * * * that when the residue is given, every presumption is to be made that the testator did not intend to die intestate." See, also, *Bruce* v. *Bruce, 90 N. J. Eq. 573; 107 Atl. Rep. 484.*

If the construction is that 9 (a) and 9 (b) are only effective in case of the death of the husband before testatrix, testatrix died intestate as to practically her whole estate and her attempt to provide for her relatives, as well as her attempt to dispose of her residuary estate, is defeated, but if the paragraphing arrangement is ignored and 9 (a) and 9 (b) given effect, she will have rationally disposed of her entire estate.

That her paragraphing is not controlling is held in *Bruce* v. *Bruce, supra:*

"Punctuation, the enumeration of·paragraphs, or a mistaken use of either in a last will and testament, will not be regarded in its construction if to do so avoids the testamentary intention manifested by the language of the will, and they will be disregarded where necessary to a proper ascertainment of the testator's intention."

See, also, *McCarthy* v. *Tierney, 155 Atl. Rep. 226,* where the Supreme Court of Errors of Connecticut said:

"Paragraphs and punctuation in a will are largely matters under the control of a scrivener, and, while they are not to be disregarded, they are not to be allowed to obscure the real intent of a testator sufficiently otherwise indicated."

It seems to me evident that testatrix did not intend to die intestate as to any of her property, but that if her husband survived her he was to have a limited life estate and that after his death the trustees were to pay $1,000 each to the nieces and nephew by marriage named in 9 (a), and that she considered 9 (b) to be a complete disposition of the rest and· residue of her estate, to be divided between her brother, nieces

and a nephew of her own blood. It seems further evident to me that it was never the intention of testatrix that if her husband outlived her he was not only to get the life estate provided for in the eighth paragraph of her will, but that his heirs should succeed to a portion of the residuary estate after the death of the husband. She was particular to provide in 8 (a) that on the death of her husband any surplus of income revert to her estate. She wanted it, together with the residue of her estate, to go as directed in 9 (a) and 9 (b). If Mr. Goff's construction of the will is correct, the result would have been that those persons named in 9 (a) and 9 (b) would receive nothing thereunder and intestacy would result, merely from a slavish adherence to the paragraphing adopted by testatrix.

By disregarding the paragraphing of the will we are not doing violence to the intent of testatrix by withdrawing from operation the first clause of the ninth paragraph, because the contingency therein referred to had not happened.

By construing the will as above indicated the husband will enjoy the limited income for life and on his death the *corpus*, with accrual of income, will be paid, as to $4,000 thereof, to those named in 9 (a) and the rest, residue and remainder as provided in 9 (b).

It is argued that testatrix would not have provided that the $4,000 bequeathed under 9 (a) should be paid out of income unless the husband had predeceased testatrix. It seems to me that this does not follow because the paramount intent of testatrix was that her husband, if living, should have a proper and sufficient income for his maintenance and care and she protected that income by providing in 9 (a) that the $4,000 therein bequeathed should only be paid "as soon as the income from my estate will permit and shall be at the discretion of my executors hereinafter named." She evidently meant by that that the surplus income over and above that necessary for the support and maintenance of her husband should be applied to the payment of the $4,000.

The construction as above gives effect to every devise and bequest and does not eliminate any operative clause by way of

construction, because the event provided for in paragraph 9 did not happen and thus is self-eliminated.

To conceive that testatrix wanted to die intestate as to her residuary estate if her husband outlived her and to dispose of it if he predeceased her would be anything but a reasonable construction and would be destructive of the presumptions of law adverted to herein.

Decree in accord herewith.