By this bill complainant seeks the construction of the last will and testament of Jean R. Herbert, who died, testate, a resident of Monmouth County, New Jersey, on January 7th, 1934. Her will was dated June 11th, 1926, a codicil thereto, January 5th, 1927, and they were duly probated before the surrogate of Monmouth County on June 20th, 1934. By her will, testatrix appointed her brother, John W. Herbert, the father of complainant, and her sister, Kate Herbert *Page 332 
Kelly, executor and executrix thereof. Kate Herbert Kelly renounced, but John W. Herbert qualified as executor and administered the decedent's estate until his death on August 26th, 1934. Thereafter his son John W. Herbert, III, who is the complainant in this proceeding, was appointed substituted administrator cum testamento annexo, and he has since that time administered the estate, which consisted of both realty and personalty, inventoried as of the date of testatrix' death, at $338,924.94. The complainant, as substituted administrator cumtestamento annexo has now filed his final account in the Monmouth County Orphans Court, and is prepared to make distribution of the estate, instructions as to which are also sought.
While the will and codicil, as one instrument, must be read from its four corners (Trustees of Princeton University v.Wilson, 78 N.J. Eq. 1; Coffin v. Watson, 78 N.J. Eq. 307;Supp v. Second National Bank and Trust Co., 98 N.J. Eq. 242), and construed as one complete document (Struble v. VanBlarcom, 130 N.J. Eq. 467) only the fourteenth paragraph of the will, and the codicil, need be here recited, as it is around the provisions of those two portions of the will that this controversy centers. The following is a reproduction as near as may be in typewriting or print of these portions of the will as written by the testatrix. The spacing, words to the line, punctuation and indentation of paragraphs, c., are hers.
WILL.
 "Fourteenth: I give and bequeath to my sister, Kate Herbert Kelly, all the rest, residue and remainder of my real and personal estate where soever situate and whatsoever the same may be as well that which I now have as that which I may hereafter acquire, and die seized possessed of or entitled to and not herein before bequeathed to her for her lifetime.
 I also give to my sister my few personal belongings namely: — my jewelry, books, one dozen silver teaspoons given me by my maternal grandmother, marked J.R.W. to J.R.H. furs and other wearing apparel and my four antique mahogany tables" *Page 333 
 CODICIL.
I, Jean R. Herbert, of the Township of Marlboro County of Monmouth, State of New Jersey, do make this my codicil, hereby confirming my last will made on the eleventh day of June one thousand nine hundred and twenty six so far as this codicil is consistent therewith. If my sister Kate Herbert Kelly dies before I do it is my wish that my estate be divided into twenty (20) equal parts and given as follows: Two twentieths (2/20ths) to the Trustees of Rutgers College in New Jersey, a body corporate of the State of New Jersey at New Brunswick, N.J. to the memory of my brother, Richard W. Herbert, in trust, the principal to be paid by my executors hereinafter mentioned, and to be received by the Trustees of said Corporation, in trust, the amount to be invested and kept invested and the income and interest therefrom to be used each year for the maintenance of scholarships in agriculture to be awarded by the Faculty of said college to worthy young men.
Two twentieths (2/20ths) to The Womans College, a subsidiary of Rutgers College of New Brunswick, N.J. the amount to be invested and to be kept invested with the income therefrom and to be used each year for the maintenance of scholarships to be awarded by the Trustees of Rutgers University.
One twentieths (1/20th) to the Methodist Episcopal Home for the Aged of New Jersey at Ocean Grove to the memory of my brother, Richard W. Herbert, deceased.
Two twentieths (2/20ths) to be equally divided among the daughters and daughter in law (wife of Paul Herbert) of my deceased brother William H. Herbert.
One twentieth (1/20th) to be equally divided among the following persons, viz: — Dr. Pauline Long, her sister, Dorothy Long, Mary S. VanKirk and Gertrude Ely, if the last named person be not living at the time of my death the bequest is to be given to her husband William H. Ely. If one or more persons named in the last clause excepting Gertrude Ely who may have pre-deceased me it is my will that the bequest be given to my brother John W. Herbert, his heirs and assigns.
I give and bequeath to my brother John W. Herbert all the rest, residue and remainder of my real and personal estate.
In witness whereof I have hereunto set my hand and seal this fifth day of January, in the year of our Lord one thousand nine hundred and twenty seven.
Signed, sealed and published and declared by the testatrix to be her last codicil in our presence who in her presence and in the presence of each other and at her request have hereunto subscribed our names as witnesses
Jean R. Herbert Emma L. Haviland Edward G. Forman" *Page 334 
The will was written by the testatrix in her own handwriting in the office of a lawyer in Freehold, New Jersey, from whom she obtained a printed skeleton form; but she did not consult him with respect to any of its provisions. The composition was entirely her own. So, also, as to the codicil which was written on the same form blank at the foot of the will and on a blank sheet of paper pasted thereon, except that the codicil was written outside the lawyer's office and brought into his office by testatrix for execution. She received neither assistance nor advice from the lawyer in the preparation of either will or codicil and asked none; and the lawyer knew nothing as to the contents of either. The testatrix was an educated and intelligent woman, but unskilled in the law. It is evident from the language of the will and codicil that she had some knowledge of the use of legal terms and testamentary language, but "a little knowledge is a dangerous thing."
The issues presented by this controversy are:
1. Did Kate Herbert Kelly take an absolute estate or only a life estate in the residue under the provisions of paragraph fourteenth of the will?
2. Did testatrix die intestate as to the residue of her estate
(a) under the will?
(b) under the codicil?
3. Was the codicil conditional in whole or in part, and did it become effective in whole or in part?
The several counsel of the various parties to this controversy are hopelessly divided on these questions and there are almost as many different theories as to the proper construction of this document as there are counsel of record.
I shall consider the issues in their order as above stated. The rules of construction here applicable are elementary and need not be recited. They are stated at some length in Supp v. SecondNational Bank and Trust Co., supra, and First National Bank v.Levy, 123 N.J. Eq. 21. *Page 335 
 1. Did Kate Herbert Kelly take an absolute estate or only a lifeestate in the residue under the provisions of paragraphfourteenth of the will?
Testatrix' only bequest to her sister Kate Herbert Kelly is that contained in the fourteenth paragraph of the will. She is not mentioned in any of the thirteen preceding paragraphs. The fifteenth paragraph provides only for the appointment of the executor and executrix. The sixteenth and concluding numbered paragraph is one of revocation of prior wills. Both the original will and codicil, and a photostatic copy thereof, were offered in evidence and are now before me. A careful examination of these exhibits will show that testatrix was neither careful nor accurate in her punctuation, although she used appropriate language to express her apparent intention. It is contended by some of the parties to this controversy that the language "I give and bequeath to my sister Kate Herbert Kelly all the rest, residue and remainder of my real and personal estate * * * as well that which I now have as that which I may hereafter acquire and die seized possessed of or entitled to and not hereinbefore bequeathed to her for her lifetime," as contained in the above recited paragraph of the will, gave to Kate Herbert Kelly an absolute estate. Counsel so contending argue that the phrase "and not hereinbefore bequeathed to her for her lifetime," "operates as a limitation upon the definition of the rest, residue and remainder which immediately precedes it and not as a limitation upon the estate previously granted." On the other hand, counsel for many of the parties contend that the words "and not hereinbefore bequeathed to her for her lifetime" should not be read as a continuous sentence or phrase, as, so read, they are meaningless, inasmuch as nowhere in the will had anythingthereinbefore, or, for that matter, thereinafter, been bequeathed to Kate Herbert Kelly for her lifetime; and that the solution of the problem of the construction of this paragraph lies in the insertion of a comma after the word bequeathed, and that, so read, there can be no question as to *Page 336 
the testatrix' expressed intention. I am in accord with this latter argument.
Bearing in mind that there is no bequest to Kate Herbert Kelly other than that contained in the fourteenth paragraph of the will, let us read the complete paragraph without any punctuation, as follows:
 "Fourteenth I give and bequeath to my sister Kate Herbert Kelly all the rest residue and remainder of my real and personal estate wheresoever situate and whatsoever the same may be as well that which I now have as that which I may hereafter acquire and die seized possessed of or entitled to and not hereinbefore bequeathed to her for her lifetime
 I also give to my sister my few personal belongings namely my jewelry books one dozen silver teaspoons given me by my maternal grandmother marked J.R.W. to J.R.H. furs and other wearing apparel and my four antique mahogany tables"
So read, it seems to me that it makes no sense at all unless we construed the words "and not hereinbefore bequeathed" to refer to the bequests contained in the preceding paragraphs of the will. The words are clearly a limitation upon or a definition of thequantum of the subject of the gift, viz.: that which was not "hereinbefore bequeathed." So considered, there is no ambiguity in the meaning of the language used and no doubt that the residuary estate is limited to the donee for her lifetime.
Or, suppose we punctuate the paragraph in accordance with accepted rules of punctuation by inserting a comma after the word "seized," a comma after the words "entitled to," and a comma after the word "bequeathed." Could there be any serious question but that only a life estate was given? I think not. By eliminating surplusage in this paragraph, it might well be read as follows:
 "I give and bequeath to my sister Kate Herbert Kelly all the rest, residue and remainder of my real and personal estate * * * not hereinbefore bequeathed, to her for her lifetime." *Page 337 
And that is the sense in which I believe the testatrix intended paragraph fourteenth to be read.
One of the general rules of construction of wills is that the words "are, in all cases, to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative" (Jarman, Twenty-fourRules of Construction, No. 16), "and words which it is obvious are miswritten may be corrected." Ibid. No. 20. Swetland v.Swetland, 100 N.J. Eq. 196, 207. "There can be no doubt that it is within the power of the courts in construing a will to depart from its strict wording when that course is necessary to give effect to the intention of the testator." Second National Bankand Trust Co. v. Borden, 113 N.J. Eq. 378, 383, and cases cited. And the court "for such purpose may mold or change the language of the will such as by rejecting superfluous, absurd or repugnant words or phrases, or restricting them in their application; by supplying omitted words or phrases; by transposing words, expressions or sentences; or by substituting one word or phrase for another." 40 Cyc. 1399. The power to supply, substitute or transpose words, c., includes, of course, the power to supply omitted punctuation marks. First MethodistChurch of Vineland v. Pennock, 130 N.J. Eq. 452, 455. SeeHawkins, Construction of Wills (2d Am. Ed.) 7 and note.
Significant of testatrix' intention to give only a life estate in the residue is the concluding clause of the fourteenth paragraph — "I also give to my sister my few personal belongings," c. Had testatrix intended the gift of the residue to be absolute, this concluding clause would have been surplusage and unnecessary, as these "personal belongings" would have been included in the previous bequest of the "rest, residue and remainder."
The argument in the brief of counsel for the executor of the last will and testament of Kate Herbert Kelly that the words "not hereinbefore bequeathed to her for her lifetime," were used because the will is patterned after an earlier will, or that the testatrix contemplated a bequest to her sister for life and forgot to insert the provision, or thought she had done so, is based upon pure conjecture, unsupported by any *Page 338 
competent evidence. So also as to the argument that the phrase was inadvertently inserted.
 2. Did testatrix die intestate as to the residue of her estate
(a) under the will (b) under the codicil?
I shall first dispose of (a). (b) will be considered under the next heading.
If I have properly construed the fourteenth paragraph of testatrix' will, then it is clear that so far as the will, apart from the codicil, is concerned, she died intestate as to the residue remaining after the life estate, as she made no further disposition thereof. But the will and codicil must be construed as one complete document, and the question of intestacy depends upon such construction.
 3. Was the codicil conditional in whole or in part, and did itbecome effective in whole or in part?
The answer to these questions requires a careful reading and analysis of the whole codicil. It will be perceived that it consists first of an introductory paragraph which ends with the word "therewith" at the top of the last page of the paper on which the will and codicil are written; then follow, as I read it, two separate and distinct donative paragraphs. The first of these donative paragraphs begins with the words "if my sister Kate Herbert Kelly dies before I do it is my will that my estate be divided into twenty (20) equal parts and given as follows:" Then follow five separate clauses or subparagraphs by which 8/20ths of the estate is given to named beneficiaries. The concluding words are "to my brother, John W. Herbert, his heirs and assigns." That this paragraph was intended by the testatrix to be separate and distinct from what follows appears clearly, I think from the language of the last clause or subparagraph. In it testatrix referred to that paragraph as the "last clause" when *Page 339 
she said "If one or more persons named in the last clause
excepting Gertrude Ely, c." It seems to me that this language definitely tags this clause or subparagraph as the "last clause" of the first donative paragraph. It is only in this clause of the codicil that the name of Gertrude Ely appears, therefore testatrix could not have meant any other clause of the codicil when she used the words "last clause." But it is not the last clause of the codicil, nor, if what follows was not a separate and distinct paragraph thereof, was it the last clause of the particular paragraph. Aside from this, a mere glance at the original codicil shows that the indentations of the paragraphs and subparagraphs are different. The residuary paragraph of the codicil has a more pronounced indentation than the preceding subparagraphs. This fact is persuasive that it was intended by testatrix to be entirely distinct and independent of what preceded it. The fact that testatrix said that in the contingency mentioned she desired that her estate be divided into twenty parts and then provided for gifts of only eight of those parts is by no means a conclusive indication that the residuary clause applied only to the remaining twentieths. Had the gifts of the eight twentieths become effective by the happening of the contingency, this clause would have been dispositive of the remaining twelve twentieths as well as any other portions of the estate not thereinbefore disposed of. It is no less dispositive of the entire twenty twentieths, the contingency for such division not having occurred. It is unnecessary for us to inquire as to testatrix' reasons for not making specific gifts of the remaining twelve twentieths, "whether through ignorance or inadvertence" is immaterial. "The courts cannot supply the omission." Kempson v. Kempson, 89 N.J. Eq. 205.
If I am correct in this analysis of the codicil into its various parts, then there is no difficulty in its construction. It is clear that the first donative paragraph is entirely contingent and as the contingency upon which it was dependent did not occur, that is, Kate Herbert Kelly did not die before the testatrix, this paragraph never became effective and should be entirely disregarded in determining the rights of the various parties to this controversy. *Page 340 
The second donative paragraph of the codicil reads as follows:
 "I give and bequeath to my brother John W. Herbert all the rest, residue and remainder of my real and personal estate."
This paragraph is complete in itself. The language is plain and understandable and read in "its ordinary and natural sense" (per Lord Halsbury in Inderwick v. Tadchell (1903), 72 L.J. Ch.393) needs no construction. If it is an independent paragraph, and I so hold, then it is not subject to the condition upon which the preceding paragraph was conditioned and it effectively disposes of the residue of testatrix' estate as to which, under the will itself, there was an intestacy. This construction corrects the defects in the will and avoids intestacy.
It will be noted that the codicil bears date less than seven months after the date of the will. It is argued with some force that the testatrix prepared the codicil after having "reviewed her will for the purpose of assuring herself that it disposed of her property in accordance with her wishes." Certainly, the codicil was an afterthought. I believe the inference is entirely justified that in the intervening period between the execution of the will and the execution of the codicil the testatrix realized that she had not effectively disposed of the residue of her estate, and that one of the purposes of the codicil was to correct that situation. It would seem that in making the codicil she had two ideas in mind not present when she made her will — (1) the contingency of her sister's prior death; and (2) the fact that she had not disposed of her residuary estate remaining after the death of her sister. It was to correct these defects in the will that she made the codicil. This, I think, is too obvious for argument.
Every intendment should be taken against intestacy. In Danker
v. Cooper, 114 N.J. Eq. 283, Vice-Chancellor Stein said: *Page 341 
"In the construction of doubtful clauses in a will, that interpretation is to be adopted if possible which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property. The presumption against an intestacy is particularly strong where the subject of the gift is the residuary estate."
The law abhors intestacy and every presumption is against such a result. Carter v. Gray, 58 N.J. Eq. 411; Douglass v. Boardof Foreign Missions, c., 110 N.J. Eq. 331; Second National Bankand Trust Co. v. Borden, supra, and Brooks v. Goff,127 N.J. Eq. 115, 118.
Authority for considering the residuary clause of the codicil as separate, distinct and independent from the preceding portion, if any is needed, is found in Brooks v. Goff, a decision by Vice-Chancellor Sooy, supra. While I think the language of the will and codicil, read as one complete instrument (Struble v.VanBlarcom, supra; Central Hanover Bank and Trust Co. v.Braman, 111 N.J. Eq. 191; Maxwell v. Maxwell, 122 N.J. Eq. 247; Aikman v. Armstrong, 81 N.J. Eq. 427) is plain and unambiguous, the arguments of many counsel tend but to confusion and perplexity. And while their numerous and varied contentions cannot be discussed in detail and disposed of separately, I cannot pass them all without comment.
Counsel for the complainant ignores the rule that the will and codicil should be construed as one complete instrument, and seeks to have the codicil first examined and construed. He concludes that it is wholly contingent and throws it into the discard, apparently without realizing that he is in reverse.
It is argued on behalf of some of the parties that the residuary clause in the codicil cannot be divorced from the condition at the beginning of the preceding paragraph because, if so, there immediately arises a conflict between the residuary clause of the will and the residuary clause of the codicil. The fallacy of this argument is immediately apparent if we place the residuary clause of the codicil immediately after the residuary clause of the will. What is disposed of by the residuary clause of the codicil is what is left after giving effect to the residuary clause of the will. The residue is what *Page 342 
remains undisposed of. A life estate had already been disposed of by the residuary clause of the will. The remainder in thecorpus was disposed of by the residuary clause of the codicil.
It is also strenuously argued that the entire codicil became effective and that the conditional words "If my sister Kate Herbert Kelly dies before I do" should be entirely disregarded.Second National Bank and Trust Co. v. Borden, supra, is cited as authority for this conclusion, but it is not. It is true that in that case the words "and if I survive him" were held to be inapplicable and ineffective as to the nineteen succeeding numbered paragraphs of the will of which the residuary clause was one. In that case the presumption against intestacy weighed heavily in favor of holding all of the nineteen paragraphs ineffective; also, as appears from the opinion, the will contained several guide posts clearly indicating that the testatrix did not intend the provisions of these nineteen paragraphs to be dependent upon the conditional words quoted; otherwise intestacy would have resulted. It was conceded that the preceding portion of the will disposed of only a life estate, and there was therein no provision for the payment of debts, funeral expenses or care of the burial plot. All these provisions were contained in one or more of the nineteen numbered paragraphs. Obviously, testatrix did not intend the payment of her debts and funeral expenses, or the care of her burial plot, to be dependent upon her survival of her brother. But if the condition applied to one of the numbered paragraphs, it would have applied to all, and it was deemed unreasonable to suppose that the testatrix would have arranged such an elaborate plan for the disposition of her estate with the idea that it was to take effect only if she survived the life tenant.
In arriving at the conclusion hereinabove expressed, I have been largely guided by the rule that "the province of the court is to construe, not to make, wills" (Tyndale v. McLaughlin,84 N.J. Eq. 652, 658; Kempson v. Kempson, 89 N.J. Eq. 205-7), and in determining testatrix' intentions I believe I have kept within the four corners of her will.
 I will advise a decree in accordance with these conclusions. *Page 343