218 N.J. Super. 91 (1987)
526 A.2d 1134
IN THE MATTER OF THE ESTATE OF MAX YABLICK.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1987.
Decided June 9, 1987.
*93 Before Judges PETRELLA, GAYNOR and SCALERA.
Sherrie Gibble, Deputy Attorney General, argued the cause for appellant (W. Cary Edwards, Attorney General of New Jersey; James J. Ciancia, Assistant Attorney General, of counsel; William P. Malloy, Deputy Attorney General, on the brief).
David H. Harris, argued the cause for respondents Glenn N. Golden and Lenore Golden (Bell, Adubato & Ligham, attorneys).
Lawrence Levitt argued the cause for respondent Estate of Max Yablick.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The issue on this appeal is the adequacy of notice and extent of participation by the Attorney General in litigation involving *94 charitable bequests, and the effect of the subsequent approval in 1986 of the first intermediate accounting on the Attorney General's attempt to reopen a settlement of prior litigation. The Attorney General challenges the trial judge's denial of his motion which sought alternatively to reopen a 1984 settlement of litigation between the coexecutors, or to enforce the settlement and to stay the judgment allowing the first intermediate accounting. We affirm.
Max Yablick (Testator) died on November 6, 1983 leaving an estate valued at over $800,000. His will was admitted to probate before the Union County Surrogate on November 17, 1983. Among other things, his will directed his executors to divide the balance of his residuary estate between any "religious, educational or charitable" organizations chosen by the executors in their discretion. Article Fourth of the will made a series of specific bequests and, if the Testator was predeceased by his sister, made the following bequest:
The remaining balance [of the residuary estate] to my Executors or Trustees to be distributed by them to religious, educational or charitable organizations as they shall determine and which are qualified as tax except (sic) [exempt] organizations pursuant to § 501(c)(3) [of the Internal Revenue Code], with the proviso that not more than twenty (20%) percent of the remaining balance be distributed to any one organization or charity.
Article Eighth of the will named Rabbi Alvin M. Marcus and Lenore Golden as coexecutors. Article Tenth provided that if, for any reason, one of the executors had to resign his office he could then designate his successor.
On December 23, 1983 a copy of the will was forwarded to the Attorney General by the attorney for the estate pursuant to R. 4:80-8. On January 9, 1984 a Deputy Attorney General wrote to the attorney for the estate stating that pursuant to R. 4:80-8 and R. 4:28-4(b) he was required to "advise this office of all subsequent developments in the administration of this estate which bear upon the rights of the charitable beneficiaries named" so that the Attorney General could insure that "proper protection is afforded to the rights of charitable beneficiaries."
*95 In January 1984 the estate's attorney, acting for Rabbi Marcus, filed an action to remove Golden as coexecutor challenging her position that prior to his death Testator had given her permission to have the cash on deposit in a money market fund in a New York bank totaling approximately $50,000. After Testator's death Golden was told not to cash the certified check she had apparently received from the bank and to allow the funds to be distributed through the estate. Golden apparently ignored these instructions and cashed the check some two weeks after Testator's death. The complaint sought return of the $50,000 and the removal of Golden as coexecutor. Golden responded by denying any impropriety and filing a counterclaim to remove Marcus as coexecutor.
The estate's attorney informed the Attorney General's office of the filing of the lawsuit in a January 17, 1984 letter. The same Deputy Attorney General who previously corresponded with the attorney responded in a letter stating that he could not appear in court when the matter was to be heard, but would appreciate being advised of the outcome of the proceedings. On February 6, 1984, after a January 27, 1984 hearing on the complaint, the estate's attorney sent copies of all pleadings to the Deputy Attorney General and further informed him that the trial judge had put the matter on the contested calendar and had set a date for a pretrial conference. The Attorney General admittedly received notice of the institution of the lawsuit, but did not intervene pursuant to R. 4:28-4(d) and was not a party to the subsequent settlement of the lawsuit.
At an April 2, 1984 hearing the attorneys for the estate and Golden advised the trial judge that the disputes embraced in the cross-complaints for removal had been settled and the matter would be dismissed. Under the settlement Golden would return the $50,000 to the estate which would then pay that amount to her as a claim against the estate. The estate would not dispute the "gift status" of the $50,000 and, in return, Golden would waive all executor's commissions and the right to select any future charitable beneficiaries. Rabbi Marcus would choose *96 the charitable beneficiaries. The estate would also pay one-half of Golden's attorney's fees amounting to approximately $3,750. The trial judge entered a consent order dismissing the cross-complaints noting that "the only thing I can do is recognize that there is a withdrawal of both claims."
In May 1985 Golden resigned as coexecutor, apparently due to poor health, and selected her son, Glenn Golden, as her successor executor.
On March 4, 1986 the executors filed a complaint seeking approval of their first intermediate accounting. A notice of settlement, along with accompanying papers, was served upon the Attorney General. The Attorney General also received notice of an application for the approval of an accounting which included the period of time and the events implicated by the 1984 settlement. In the course of reviewing these documents the Attorney General's office noted that the 1984 litigation had been settled without his participation and that Lenore Golden had resigned as executor. On April 11, 1986 a second Deputy Attorney General appeared before the trial judge to oppose various elements of the proposed accounting. The Deputy Attorney General pointed out that the 1984 settlement had been entered without the State's participation and said "we don't know at this point whether we wish to challenge that, but we are concerned about it." The judge subsequently entered an order approving the accounting which included approval of the receipt and payment of the formerly disputed $50,000 and of the payment of executor's commissions to Glenn Golden. The State did not appeal from this order.
Shortly thereafter the Attorney General moved to "set aside the 1984 settlement or, in the alternative, stay the judgment approving the first intermediate accounting" on the grounds that the Attorney General was a "necessary party" to the 1984 settlement. He argued that the failure to give the State notice of the settlement allowed the interests of the unnamed charitable beneficiaries to go unrepresented. The Attorney General alternatively sought the return of the $50,000, an order denying *97 Glenn Golden's claim for commissions, or the naming of Rabbi Marcus as sole executor.
After a hearing the judge denied the motion in all respects. This appeal is from that denial. He determined that the Attorney General had been on notice that a complaint had been filed to remove Lenore Golden and that the State had failed to intervene in that litigation. In addition, the Attorney General had received notice of the first accounting and had appeared, but had failed to enter any formal objections to the 1984 settlement at that time. The judge noted that the State's recourse was to appeal the order approving the accounting and that he would not reopen the 1984 settlement.
The Attorney General argues on appeal that the 1984 settlement cannot be allowed to stand because of the failure of the parties to notify the State of this settlement, thereby preventing the unnamed charitable beneficiaries from being properly represented. He also asserts that the charitable provisions in the will created a charitable trust, and that the Attorney General is an indispensable party to any litigation involving charitable trusts because of his common-law responsibilities involving the enforcement and protection of public charities.
R. 4:80-8 requires the executor of an estate containing property devoted to a present or future charitable use or purpose to send a notice and a copy of the will to the Attorney General within 60 days after the admission of the will to probate. Similarly, R. 4:28-4(b) requires that notice be given to the Attorney General of all litigation involving a will or trust in which property is devoted to a charitable purpose if the Attorney General has previously given notice to the executor that he wishes to be notified of such litigation. Under R. 4:28-4(d) the State or any governmental subdivision is permitted to intervene "upon timely application" in any action involving charities, trusts and estates noticed under R. 4:28-4(b).
The record discloses that the estate's attorney provided the Attorney General's office not only with timely notice of the probate of the will, but with notice of the institution of suit *98 against the coexecutor as well. The Attorney General was not made a party to that litigation. Pursuant to R. 4:28-4(b) the Attorney General's office requested notice of "all subsequent developments" in the administration of the estate affecting the rights of the charitable beneficiaries. The estate's attorney not only informed the Attorney General of the filing of the complaint to remove Lenore Golden as coexecutor and the outcome of the first hearing on the matter which resulted in the case being placed on the contested calendar, but by his letter of February 6, 1984 had sent him a copy of the complaint, order to show cause, answering certification, answer to the complaint and other papers filed on behalf of the coexecutor. Significantly, the Attorney General never sought to exercise any right of intervention pursuant to R. 4:28-4(d) or on any other grounds, or even file an appearance in the litigation by way of answer or otherwise. See R. 1:1-2 and R. 4:5-1.
Testamentary bequests similar to that contained in the residuary clause of Article Fourth have been held to create a valid testamentary, charitable trust that will be enforced, provided that the Testator has named a trustee to designate the recipients of the bequest. Levin v. Attorney General, 136 N.J. Eq. 568, 569-570 (Ch. 1945). See also Litcher v. Trust Co. of New Jersey, 11 N.J. 64, 78-80 (1952); Brown v. Coxson, 118 N.J. Eq. 114 (Ch. 1935), aff'd 119 N.J. Eq. 86 (E. & A. 1935); 6 N.J.Practice (Clapp, Wills and Administration) (revised 3rd ed. 1984) § 526 at 48; Bogert, Trusts and Trustees, (2d ed. 1977) § 371 at 84. A trust relationship can be created without specifically using the term "trust." Kronisch v. Howard Savings Institution, 154 N.J. Super. 576, 589 (Ch.Div. 1977).
The Attorney General has been considered as the protector of the public's interest in the trust, and he has been referred to as an indispensable party to any litigation where the interests of a charitable beneficiary were substantially implicated. Passaic National Bank Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603, 608 (E. & A. 1945); In re Probate of Will of Seabrook, 90 N.J. Super. 553, 564 (Ch.Div. 1966); Fidelity Union *99 Trust Co. v. Ackerman, 18 N.J. Super. 314, 326 (Ch.Div. 1952). Failure to notice the Attorney General and accord him the opportunity to intervene might have entitled the State to reopen the litigation to assure that the interests of the charitable beneficiaries were properly protected. If a matter is resolved without notice to the Attorney General, he has on some occasions been afforded the opportunity to consider participating in the action before a judgment is entered. See In re Pfizer, 33 N.J. Super. 242, 264-265 (Ch.Div. 1954), aff'd o.b. 17 N.J. 40 (1954); Y.W.C.A. of Camden v. Murrelle, 141 N.J. Eq. 229, 237 (Ch.Div. 1948) (attorney general neither noticed nor named as a party). Notwithstanding the "indispensable party" label, we know of no case or rule which requires that the Attorney General must be named as a party in every case which would fall within the ambit of R. 4:28-4(b). The Attorney General is essentially given an option to elect intervention. Our court rules have not followed the concept of requiring the Attorney General to be made a party and a required participant in every lawsuit involving charitable or fiduciary interests. Rather, the thrust of the rule is to afford notice to the Attorney General who then must determine whether to intervene.
In the instant case the Attorney General had notice of the original litigation and its nature as well as of the subsequent accounting. He did not choose to intervene, but merely asked to be kept informed of the proceedings.[1] Moreover, the disputed $50,000 claim and subsequent payment to Golden, and the commission payments to her son, were included in the items covered by the first intermediate accounting which was approved by order of the court on May 20, 1986. The Attorney General had likewise received notice of that proceeding and had *100 raised the issue of the 1984 settlement before the court at the hearing on the accounting, stating in essence "that they [the Attorney General] did not know at that point whether to challenge the settlement, but were concerned about it." In the presence of the Deputy Attorney General appearing at these proceedings the trial judge approved the accounting, with some minor exceptions, and noted that the 1984 settlement had been "in the best interest of everyone." The State failed to timely appeal from the judgment allowing this account. See R. 2:4-1.
N.J.S.A. 3B:17-8 provides that a judgment allowing an account shall be "res adjudicata" as to all parties who received notice and
as to all exceptions which could or might have been taken to the account, and shall constitute an approval of the correctness and propriety of the account ... and the legality and propriety of other matters and also shall exonerate and discharge the fiduciary from all claims of all interested parties and those in privity with or represented by interested parties....
Those parties who actually raise and litigate an issue in an accounting proceeding are bound by the judgment entered thereon. Brown v. Fidelity Union Trust Co., 135 N.J. Eq. 404, 410 (Ch. 1944); 7 N.J.Practice (Clapp, Wills and Administration) (revised 3rd ed. 1984) § 1471 at 596. See also In re Estate of Mary Skvir, 170 N.J. Super. 559, 562 (App.Div. 1979). The rule of finality expressed in the statute applies as well to judgments approving intermediate accounts. Van Buren v. Plainfield Trust Co., 130 N.J. Eq. 244, 246-247 (Ch. 1941) (interpreting prior law). In the absence of fraud or mistake a judgment approving an accounting becomes conclusive upon the expiration of the time for appeal. Ibid. In In re Nuese, 15 N.J. 149 (1954), the Supreme Court rejected appellant's attempt to challenge the finality of an accounting after the time for appeal had passed by noting "that where the time for taking an appeal has run the parties to a judgment have a vested right therein which cannot subsequently be taken from them." Id. at 152.
The present case provides no basis for a finding of fraud or mistake. As noted, the record discloses that a notice to settle an account was filed and served upon the Attorney *101 General. The Attorney General appeared, raised certain questions or objections which were rejected and failed to file an appeal. Accordingly, based on N.J.S.A. 3B:17-8, the Attorney General cannot now challenge the failure to make the State a party to the 1984 settlement. As we noted in In re Estate of Mary Skvir, supra, the paramount objective of an action to settle an account is to resolve the liability of the accountant, and not to promote further litigation. See also In re Oathout, 25 N.J. Misc. 186 (Orph.Ct. 1947).
Had the Attorney General wanted to become a party to the litigation involving Lenore Golden's claims, he could and should have exercised the right to intervene pursuant to R. 4:28-4(d). At the very least he could have sought to enter an appearance by way of answer in the litigation. Having failed to intervene in a timely manner, and having failed to raise objection to the 1984 settlement at the hearing on the first accounting, the Attorney General cannot now object to that judgment or the failure to be made a party to that action.
Affirmed.
NOTES
[1] In his brief the Attorney General argues, without reference to any transcript or document, that requests for the deposition taken before the settlement were never honored, and that the depositions might bear on the reasonableness of the settlement. Aside from the fact that depositions would have been available in discovery, and certainly to any party in the litigation, the failure to intervene or further pursue the matter has resulted in a waiver of that request.