NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1950-15T2
 A-1959-15T2

IN THE MATTER OF THE ESTATE
OF GUY LANDSTROM, DECEASED.
_______________________________

ROBIN NEGLIA,

 Plaintiff-Appellant,

v.

WILLIAM CALDWELL,

 Defendant-Respondent.
_______________________________

 Argued September 27, 2017 – Decided October 24, 2017

 Before Judges Fuentes, Manahan and Suter.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Hunterdon County, Docket
 No. 046667 and Law Division, Hunterdon County,
 Docket No. L-0403-13.

 Jeffrey M. Advokat argued the cause for
 appellant Robin Neglia (Advokat & Rosenberg,
 attorneys; Mr. Advokat, on the briefs).

 William J. Caldwell, respondent, argued the
 cause pro se.

PER CURIAM
 In these back-to-back appeals, which we consolidate for

purpose of this opinion, Robin Neglia, as beneficiary of the estate

of Guy Landstrom, seeks reversal of an order granting summary

judgment in favor of the executor, William Caldwell. Neglia also

seeks reversal of an order quashing a subpoena. After

consideration of the record and application of controlling law,

we affirm.

 Since we write solely for the parties who are well acquainted

with the matter, we provide a brief factual and procedural history.

 After Landstrom died, a Last Will and Testament (Will) dated

May 15, 2010, was admitted to probate. Caldwell was named executor

in that Will. Neglia contested the Will and sought to admit to

probate a different Will dated May 1, 2012. After Neglia filed

an action, the parties, including the two children of Landstrom

and certain charitable interests, entered into a consent judgment.1

Pursuant to the terms of the judgment, the May 15, 2010 Will was

amended and admitted to probate. The sole matter unresolved by

the judgment was the estate's accounting. Thereafter, Caldwell

filed a final accounting in the Superior Court, Law Division,

Probate Part.

1
 A cross-appeal filed by Landstrom's two children was dismissed
on August 5, 2016, due to failure to prosecute their cross-appeal.

 2 A-1950-15T2
 I.

 Neglia filed exceptions to the final accounting. The

exceptions included: (1) the sale price of the real property

located in Flemington represented a significant loss in value;2

(2) the expenses incurred as a result of a burst pipe at the

property were not the responsibility of the estate but the

responsibility of the executor; and (3) listed disbursements for

repairs and maintenance were not an expense of the estate if they

were incurred as a result of the burst pipe. On July 17 and

September 21, 2015, a bench trial was conducted.

 At the conclusion of the trial, the court rendered an oral

opinion approving the accounting subject to some minor exceptions.

In reaching its decision, the court held:

 There were also issues raised in the
 accounting in a — in challenges about the real
 property and the amount sold. I have no
 indication that the two [hundred] fifteen
 [thousand dollar sale price of the home] was
 wrong, unreasonable, inappropriate, a waste or
 otherwise, and I can take judicial notice of
 the fact that home values in this county have

2
 Under the terms of the consent judgment, Neglia had until July
1, 2013, to pay the estate $25,000 as payment of account for
Neglia's share of her estimated transfer inheritance taxes due.
She also had until August 1, 2013, to provide proof of a written
mortgage commitment in the amount of $150,000, in furtherance of
her desire to purchase the Flemington property. If Neglia did not
satisfy the conditions, the estate was permitted to sell the
property. It is unclear which condition Neglia failed to satisfy.
The estate eventually sold the home for $215,000.

 3 A-1950-15T2
 been going all over the place over the last
 several years so I don't find any basis for
 upsetting the accounting on that basis.

 With respect to the issue of the water
 and the frozen pipe, this is not a res ipsa
 case.3 The fact that the pipes were frozen
 does not speak necessarily — that there was
 negligence. Lots of people have pipes frozen
 including yours truly. There are lots of
 reasons why it might happen. . . . There's no
 indication that [the executor] committed
 negligence. I have no testimony on that
 subject whatsoever and the burden is again on
 the plaintiffs [sic] to justify the showing
 that the — that there was negligence here and
 I've heard nothing really to indicate it.

 While the probate action was pending, Neglia filed a separate

action in the Law Division alleging that Caldwell engaged in

conduct that would constitute common law and statutory waste and

fraudulent concealment. Neglia averred that Caldwell failed to

notify either Neglia or the insurance carrier about the burst pipe

and the consequential damage, which decreased the value of the

Flemington property.

3
 This is a reference to the doctrine of "res ipsa loquitur," which
permits the fact-finder "to infer negligence in certain
circumstances, effectively reducing the plaintiff's burden of
persuasion, but not shifting the burden of proof." Khan v. Singh,
200 N.J. 82, 91 (2009). Application of res ipsa loquitur requires
three fundamental predicates: "(a) the occurrence itself
ordinarily bespeaks negligence; (b) the instrumentality was within
the defendant's exclusive control; and (c) there is no indication
in the circumstances that the injury was the result of the
plaintiff's own voluntary act or neglect." Ibid. (quoting
Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269 (1958)).

 4 A-1950-15T2
 Neglia moved to consolidate the Law Division action with the

probate action. The motion, opposed by Caldwell, was denied as

was Caldwell's motion for dismissal. Neglia's motion for

reconsideration was also denied. Thereafter, in 2013 and 2014,

both parties filed motions and cross-motions for summary judgment

and for dismissal, which were denied. Neither party has filed an

appeal of those orders.

 On November 16, 2015, Caldwell moved for summary judgment in

the Law Division action arguing that the issues in contest were

resolved by the probate action. Neglia opposed the motion and

cross-moved for summary judgment. Subsequent to oral argument,

the court granted summary judgment to Caldwell, dismissing the

complaint. In reaching the decision, the court held:

 The issue in the probate matter was the
 appropriateness of the accounting and, among
 the challenges, were challenges to the values
 for the house, whether there was inappropriate
 conduct with respect to delay in selling the
 house, whether there was inappropriate conduct
 with respect to damages to the house that
 should have been accounted for or somehow
 referenced in the accounting.

 . . . .

 For the [c]ourt to allow this cause of
 action to continue would, in effect, be giving
 the plaintiff in this matter a second bite at
 the apple in saying well, there should be an
 effective re-litigation of the value of the
 house, a re-litigation of the executor's
 conduct in terms of protecting the house

 5 A-1950-15T2
 against harm, all of which were covered rather
 thoroughly in the accounting action.

 . . . [The claim] may have a different
 name, waste and concealment, but the name
 isn't the substance. And many of our cases
 say we look at the substance of what’s being
 alleged, not the title or the name given to
 it. And, in substance, the [c]ourt dealt with
 all these claims . . . finding that the
 handling of the house, as set forth in the
 accounting, was proper.

 To get to that point, the [c]ourt had to
 find that there was no waste with respect to
 the house, that there was no need to account
 for any waste, that the price that ultimately
 sold for the house was reasonable under the
 circumstances and that there was no damage
 which should have been accounted — taken care
 of in the accounting.

 II.

 After the probate trial but prior to the entry of the order

affirming the accounting, Neglia recalled that Landstrom had a

legal matter pending in Clinton Township at the time of his death

and that $6000 was held in Caldwell's trust account as a retainer.

The Clinton Township case was dismissed upon Landstrom's death.

The funds were not listed in the final accounting.

 Neglia's counsel corresponded by letter to Caldwell seeking

information as to the whereabouts of the trust funds. Caldwell

replied that the information sought was subject to attorney-client

privilege and "[n]o additional information concerning those

representations [would] be provided[.]" Neglia's counsel again

 6 A-1950-15T2
corresponded by letter to Caldwell stating that if Caldwell did

not reveal the information concerning the $6000 asset, a subpoena

would be issued with a request for fees and sanctions. A subpoena

was served on Caldwell requesting production of "any and all

documentation which indicates the location of the [$6000] that was

held for Guy Landstrom during 2011-[12]." Caldwell moved to quash

the subpoena.

 On the same date the court granted summary judgment on the

Law Division case, the court granted Caldwell's motion to quash

holding that at the time the subpoena was served, the probate case

"was over." When Neglia's counsel objected, the court advised

that the case would need to be re-opened and that "you can't just

simply subpoena." An order was entered quashing the subpoena. No

further motions were made by Neglia seeking relief from the

judgment. See R. 4:50-1.

 On January 14, 2016, Neglia filed a notice of appeal from the

December 23, 2015 order for summary judgment and the order of same

date quashing the subpoena.

 On the appeal of the order granting summary judgment, Neglia

raises the following arguments:

 POINT I

 THE LOWER COURT'S ORDER OF DISMISSAL SHOULD
 BE REVERSED.

 7 A-1950-15T2
 POINT II

 DEFENDANT-RESPONDENT IS NOT ENTITLED TO
 SUMMARY JUDGMENT AS THERE ARE GENUINE ISSUES
 OF MATERIAL FACT WITH REGARD TO COUNTS ONE,
 TWO, THREE.

 POINT III

 PLAINTIFF-APPELLANT'S COMPLAINT SHOULD NOT BE
 DISMISSED WITH PREJUDICE BASED ON RES
 JUDICATA.

 POINT IV

 PLAINTIFF-APPELLANT'S COMPLAINT SHOULD NOT BE
 DISMISSED WITH PREJUDICE BASED ON COLLATERAL
 ESTOPPEL.

 On the appeal of the order quashing the subpoena, Neglia

raises the following argument:

 POINT I

 THE ORDER QUASHING THE SUBPOENA SHOULD BE
 REVERSED.

 We have considered these arguments after consideration of the

record and in application of relevant principles of law, and

conclude they lack sufficient merit to warrant extended discussion

in a written opinion. R. 2:11-3(e)(1)(E). We add only the

following.

 At the outset we note that, while we affirm the order of

summary judgment in favor of Caldwell, we do so for different

reasons than those articulated by the motion court. Because we

review judgments, not decisions, we may affirm on any ground.

 8 A-1950-15T2
Serrano v. Serrano, 367 N.J. Super. 450, 461 (App. Div. 2004)

(quoting Isko v. Planning Bd. of Livingston Twp., 51 N.J. 162, 175

(1968)) ("Although we affirm for different reasons, a judgment

will be affirmed on appeal if it is correct, even though 'it was

predicated upon an incorrect basis.'"), rev'd on other grounds,

183 N.J. 508 (2005).

 It is without dispute that Neglia has not appealed the

judgment allowing the account in the probate action. As this

court has held, a judgment allowing an account is final and

exonerates the fiduciary. Matter of Will of Maxwell, 306 N.J.

Super. 563, 577-78 (App. Div. 1997), certif. denied, 153 N.J. 214

(1998). In Maxwell, we held:

 A judgment allowing an account "after due
 notice [is] res adjudicata" as to all parties
 and "as to all exceptions which could or might
 have been taken to the account." N.J.S.A.
 3B:17-8. Such judgment acts to "exonerate and
 discharge the fiduciary from all claims of all
 interested parties and of those in privity
 with or represented by interested parties
 except . . . [a]s relief may be had from a
 judgment in any civil action." Ibid.; see R.
 4:50-1, -2. This concept of finality applies
 to judgments approving intermediate
 accountings as well as final accountings. In
 re Estate of Yablick, 218 N.J. Super. 91, 100
 (App. Div. 1987).

 Neglia filed exceptions to the accounting that involved the

same waste and fraudulent concealment issues she alleged in the

Law Division action against Caldwell in his capacity as fiduciary.

 9 A-1950-15T2
As such, the judgment affirming the accounting was res judicata

as to those exceptions, as well as all claims Neglia instituted

against Caldwell in the Law Division action.

 We next turn to Neglia's appeal of the order to quash the

subpoena. Neglia argues, without citing any legal authority, that

"beneficiaries should always be allowed to find out what happened

to assets, whenever they are discovered."

 A trial court's decision to quash a subpoena is reviewed by

an appellate court for abuse of discretion. State v. Medina, 201

N.J. Super. 565, 580-81 (App. Div.), certif. denied, 102 N.J. 298,

508 (1985). Reversal is warranted upon a finding that the trial

court's determination "constituted an abuse or mistaken exercise

of discretion[.]" State v. Johnson, 137 N.J. Super. 27, 30 (App.

Div. 1975). A subpoena may be employed as a method to obtain pre-

trial discovery. R. 1:9-2; R. 4:14-7.

 Our Supreme Court has made clear that the purpose of the

broad pre-trial discovery rules is to prevent surprise at trial

and so that the parties are conversant with all available facts.

See Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997) (citing

Jenkins v. Rainer, 69 N.J. 50, 56 (1976) ("Our court system has

long been committed to the view that essential justice is better

achieved when there has been full disclosure so that the parties

are conversant with all the available facts."). On the other

 10 A-1950-15T2
hand, post-trial discovery permitted by rule is narrow. See R.

4:59-1(f) (supplementary proceedings in aid of judgment or

execution).

 Here, the subpoena was issued after the conclusion of the

trial but before the entry of the order. This court has addressed

the issue whether a case is over at the close of trial or over

when the actual judgment is entered. See Parker v. Parker, 128

N.J. Super. 230 (App. Div. 1974). In Parker, the parties were

seeking dissolution of their marriage. Several days before trial,

the parties entered into a property settlement agreement. The

agreement was approved by the court at trial, and the plaintiff

signed the agreement. At the conclusion of trial, the judge

stated, "I will grant a dual judgment of divorce to each against

the other." A week later, the plaintiff's attorney submitted a

proposed form of the final judgment to the defendant's attorney,

however, it was never returned.

 Approximately two weeks later, the plaintiff was killed in

an occupational accident. The plaintiff's attorney then brought

a motion to enter the divorce judgment nunc pro tunc and the court

entered judgment. On appeal, the defendant argued that the entry

of judgment was in error because the divorce action abated on the

plaintiff's death. We upheld the entry of the judgment in holding:

 11 A-1950-15T2
 It is clear that upon the close of
 the divorce trial the court made a
 definitive adjudication of the
 controversy, reflecting its
 conclusive determination that each
 party be granted a divorce. In this
 context, we subscribe to the view
 that the entry of a written judgment
 is essentially a non-discretionary
 act by which evidence of the
 judicial act is recorded.

 [Id. at 232-33.]

 We have also held that "the oral pronouncement of a judgment

in open court on the record constitutes the jural act and that the

entry of the written judgment is merely a ministerial

memorialization thereof." Mahonchak v. Mahonchak, 189 N.J. Super.

253, 256 (App. Div. 1983).

 In this matter, the probate action concluded when the court

held that the accounting "was affirmed for the reasons stated."

Although the court granted the parties additional time to submit

a fee affidavit, there was a definitive adjudication of the

controversy. As the issue of the accounting was adjudicated,

there was no authority by rule for the issuance of the subpoena,

which was properly quashed.

 Affirmed.

 12 A-1950-15T2